State *v.* Marvin.

## STATE *v.* MARVIN, Jr.

When an indictment for adultery contains two counts, for two separate offences, if a *nolle prosequi* is entered as to one count, and the cause proceeds to trial on the other, this is no ground to set aside a verdict returned against the defendant, nor to arrest the judgment.

The statute providing that a copy of the town clerk's record shall be evidence of a marriage, does not make such copy evidence of a higher degree than direct proof of the marriage by witnesses, and such proof by witnesses is admissible on an indictment for adultery, without showing that a copy of the record can not be produced.

State *v.* Marvin.

Evidence of improper familiarities before and about the time of the alleged offence, is competent, in corroboration of other proof, on trial of an indictment for adultery.

The husband of the woman with whom the defendant was alleged to have committed the offence, was a witness for the prosecution, and testified to the fact of the adultery. He testified without objection that he cohabited with his wife for some five years after their marriage, and down to near the time when the crime was alleged to have been committed; and further stated, that he did not live with her at the time of the trial. To this last statement the defendant objected, but it was held to have been properly admitted.

The offence was stated, on the part of the prosecution, to have been committed in a barn belonging to the defendant. In addition to other evidence of the parties meeting each other there, a witness testified that he saw them there on one occasion in the autumn; and at another time saw the woman near the barn, looking as if she had been rolling in hay, and with the appearance of hay-chaff on her shawl, but did not then see the defendant there, nor from what direction she came. — *Held*, that this evidence of the appearance of the woman's dress was competent.

INDICTMENT FOR ADULTERY, containing two counts. The first count alleged that the defendant committed the crime with Catherine Burt, wife of Harmon Burt, on the fifteenth of October, 1853. The second count alleged that he committed the same crime with Catherine Burt on the twenty-fifth of November, 1853.

The defendant pleaded not guilty; and after the jury were sworn to try the cause, and the indictment had been read to them, the counsel for the defendant objected that the indictment charged two separate offences, and was bad for that cause; or, if not, that the defendant could not be tried for the two offences at the same time.

The Attorney-General admitted that the two counts were intended to charge two separate offences. The court overruled the objection, to which the defendant excepted.

The counsel for the State then introduced evidence of the marriage of Harmon Burt with Catherine Burt; and after the evidence to this point was finished, but before any evidence was offered of the crime charged in the indictment, the counsel for the defendant renewed their former objection, whereupon the counsel for the State entered a *nolle prosequi* as to the first count

of the indictment, and proposed to proceed with the trial on the second. The counsel for the defendant objected to this course, but the objection was overruled, to which the defendant excepted.

To prove the marriage of Harmon Burt with Catherine Burt, the State introduced as a witness, Joseph A. E. Long, the clergyman, who testified that he married them at Hooksett, in this State, where they then resided ; that he made a private record of the marriage, and returned a certificate of it to the town-clerk of Hooksett. The defendant objected that the record of the town-clerk was the best evidence, and that other evidence could not be received until it appeared that there was no such record, or that a copy of it could not be produced. But the court overruled the objection, to which the defendant objected.

Joseph A. E. Long testified that he had been an ordained minister of the Congregational order in this State, since June, 1822 ; that he had performed all the offices that belong to an ordained minister, and had habitually performed the duties of an ordained minister except in ill health ; that he was then preaching as the regular minister at Hooksett, though he was not ordained as the pastor of the church there ; that he was ordained as an evangelist. The defendant objected, but the objection was overruled, to which the defendant excepted.

Harmon Burt was examined as a witness for the State, to prove his marriage with Catherine Burt, and also the fact of the adultery. He testified that he was married November 4, 1847, and lived with his wife Catherine Burt some five years, and had one child by her. He was then asked if he lived with her at the time of the trial, and answered that he did not. To this last question and answer the defendant objected, but the objection was overruled, and the defendant excepted.

The adultery was charged to have been committed in a barn belonging to the defendant, situated about fifteen rods from the dwelling-house of Francis Phillips, and the evidence tended to show that the defendant and Catherine Burt met each other in the barn sundry times before and about the time of the alleged adultery. Francis Phillips testified that the defendant and

Catherine Burt were at and about the barn at one time in the autumn; and that at another time, in the autumn, Catherine Burt came to his house, and looked as if she had beén rolling in the hay ; that he could not say in what direction she came from, and that she had chaff on her shawl, which looked like hay chaff. To this evidence of the appearance of her dress, and the chaff on it, the defendant objected, but the objection was over-ruled, to which the defendant excepted. The jury returned a verdict of guilty.

The defendant moved to set aside the verdict, and in arrest of judgment.

*Cushing,* for the defendant. I do not find authorities on the point that the record of the marriage is to be considered as the best evidence ; but it may be regarded as a new question under our statute. When the statute provides for the records, and makes the record evidence of the marriage, it must have been intended to make this the best evidence, and until it is shown that the record can not be produced, other evidence is inadmissible. Other evidence is open to suspicion, until it is shown that the statutory evidence can not be produced.

The evidence that Burt was not at the time of the trial living with his wife, had no legitimate tendency to prove the defendant's guilt, but had an obvious tendency to prejudice his cause. Men separate from their wives for other causes than the adultery of the wife ; and the fact that he lived separate from his wife had no proper tendency to increase the weight of Burt's testimony ; but it was prejudicial to the defendant, because it tended to show a family broken up.

The evidence that Burt's wife came to Phillips' house with appearances of hay about her dress, was too remote, as the evidence did not show that she came from the barn, or from that direction, or that the respondent had been seen in the neighborhood. The appearance of her dress would be no more than her admission or confession ; and her admission or confession would not be competent against the defendant.

State *v.* Marvin.

*Sullivan*, Attorney General, and *Faulkner*, Solicitor, for the State.

PERLEY, C. J. In cases of felony it is said that regularly no more than one distinct offence should be charged in one indictment ; and, if the objection is taken before plea, the court will .quash the indictment. If the objection is not made till after plea, the court may compel the prosecutor to elect on which charge he will proceed ; but this is only matter of precedence and discretion, which rests with the judge to exercise. 1 Chitty Cr. Law 253 ; 2 East Pl. C. 515 ; *Rex* v. *Jones*, 2 Camp. 132 ; *Bemis*, J., Indictment, 4.

But in point of law there is no objection to the insertion of charges for several distinct felonies of the same degree in one indictment. The same authorities, and *The King* v. *Kingston*, 8 East 41.

In cases of misdemeanor the joinder of several offences is not in general an objection in any stage of the proceedings. 1 Chitty Cr. L. 254 ; *Rex* v. *Benfield*, 2 Bur. 984 ; Roscoe's Ev. 216.

At common law adultery is not an offence punishable in the temporal courts, but only by ecclesiastical censure ; and under our statute it is punished by imprisonment in the common gaol, not exceeding one year, and by fine not exceeding five hundred dollars. The offence is, therefore, a misdemeanor, and not a felony ; and on the authorities no objection could be made in any stage of the proceedings to joining in the same indictment several counts for several such distinct offences, and trying the defendant on them all at the same time. But in this case the defendant was in fact tried on one count only, and can have no ground to complain that he was really embarrassed in his defence by the circumstance that he was originally charged with two offences in the same indictment.

The statute provides that a copy of the record of any marriage, certified by a minister or justice of the peace, authorized to solemnize marriages, clerk of the people called Friends, or

town-clerk, shall be received in all courts and places, as evidence of the fact of such marriage. Comp. Laws 376, sec. 11.

It is contended that the copy of such record is made by the statute the best evidence, and that till it appears this evidence can not be produced, other evidence is not admissible to prove the fact of marriage, on the well established general principle that where there are different degrees of evidence, the inferior evidence can not be received until it appears that the best evidence is not within the power of the party. If this position be correct, the rule must be general, and applicable to the trial of all causes, civil as well as criminal; for the rule that the best evidence must be produced is general, and not confined to criminal proceedings; and the usual evidence received in civil causes, of marriage by recognition and cohabitation, would be excluded until it appeared that the statutory proof could not be produced. We can not think that the Legislature, in enacting this statute, contemplated any such radical change in the law of evidence.

By the English marriage act of 26 Geo. II., chap. 33, sec. 14, marriages were required to be registered in the parish registry, and the entry in the register was held to be evidence that the persons therein named were married on the day specified, by bans or license, as the case might be; and by 4 Geo. IV., chap. 76, the register is expressly made evidence of the marriage. 1 Phillips' Ev. 409, 410. Yet, where direct evidence of the marriage is required, other evidence besides the register may be made by the testimony of witnesses present at the marriage, or of the parties themselves, when competent. 2 Greenl. Ev., sec. 461; and in prosecutions for bigamy it is not indispensably necessary to produce the registration of either marriage; it is sufficient to prove the fact of marriage by a person present at the time. 1 Phillips' Ev. 410.

In Cowen & Hill's Notes to Phillips, it is said that the parish register is not the only evidence of the marriage. One who was present is as well qualified to speak to that fact as the register itself; for there is no principle of evidence which makes the register indispensably necessary as a higher species of proof.

The object of registration is to facilitate and preserve the evidence of marriages, and not to limit or narrow the proof. 5 Cowen & Hill's Phillips 207, 208 ; and this we think is the true view of the question.

The objections to the qualification of the clergyman who performed the marriage ceremony are not insisted on, and can not prevail.

Harmon Burt was a witness to the fact that the defendant committed the crime charged in the indictment, with his wife, Catherine Burt. He testified without objection, that he cohabited with his wife for some five years after their marriage, which would be down to the time or near the time when the offence was alleged to have been committed. If it had been left to be inferred that he still continued to cohabit with her, it would have a tendency to throw discredit on his testimony ; it would have been open to argument, that, if he had known of his wife's adultery, as he testified, he would not have continued to live with her as an innocent woman. There would have been a sort of practical inconsistency between his story and his conduct, calculated to detract from the weight of his testimony.

As a general rule, the relation in which a witness stands to the parties and the cause, is proper to be shown, as affecting the credit due to his testimony. In this case it was material that the jury should know — at least, it was proper that they should know — that the witness was the husband of Catherine Burt, with whom the defendant was alleged to have committed the crime for which he was tried ; and if so, it could not be improper that they should also know whether he cohabited with her or lived separate. This objection must be overruled.

The evidence went to show that the defendant and Burt's wife met at sundry times in a barn belonging to the defendant. There was nothing to show that they had occasion to meet there for an honest and innocent purpose. A suspicious intimacy of this sort is competent evidence, on trials for this offence, though it does not apply directly to the particular fact charged as the foundation of the prosecution. The other evidence went to

show that at other times the defendant had met Burt's wife at the barn. She was then near the barn, with appearances upon her dress which had a fair tendency to show that she had then recently been in the barn. This was competent evidence to show that she had been in the barn; and, taken in connection with the other evidence, that she had been there for the purpose of meeting the defendant, as she had done in other instances proved by the other evidence, and the appearance of her dress, would also have a tendency, perhaps slight, to prove that the object for which it was alleged that she went there had been accomplished.

Her going to the barn would be a fact, and not a confession; so the appearance of her dress would be a fact, and not a confession.

The appearance of her dress was evidence that she had been in the barn. Her going to the barn was part of the evidence which went to show an improper intimacy between her and the defendant, and the evidence was, we think, properly admitted.

*Judgment on the verdict.*