Seifert *v.* State.

## SEIFERT *v.* THE STATE.

[No. 19,939.   Filed April 24, 1903.]

CRIMINAL LAW.—*Abortion.—Principal.—Absence of Principal.*—One who procures an instrument for a woman, which he advises and directs her to use upon herself to produce a criminal abortion, may be convicted as principal, where the woman, pursuant to such advice and direction, uses the instrument for such purpose, though in the absence of the former, thereby causing her to miscarry and die. *pp. 465-472.*

SAME.—*Abortion.—Dying Declarations.—Evidence.*—Dying declarations of the woman, in a prosecution for criminal abortion resulting in death, to the effect that when she told defendant that she was pregnant by him, he promised to relieve her, and brought her the instrument with which she procured the abortion and told her to use it, were admissible as relating to the circumstances of the death. *pp. 467-470.*

SAME.—*Abortion —Corpus Delicti.—Evidence.*—In a prosecution for producing criminal abortion resulting in the death of the woman, evidence showing the abortion, and the death as a result thereof, that there were two openings from the uterus into the abdominal cavity, that there was a delay in calling a physician, and statements of deceased of her purpose to get rid of the child, was sufficient to establish the *corpus delicti. pp. 469, 470.*

EVIDENCE.—*Privileged. Communications.—Physician and Patient.—Witnesses.—Criminal Law.—Abortion.*—Testimony of a physician, who was called to treat deceased, that after she had consulted him, and he had advised her, she then stated to him that she desired him to perform a criminal abortion upon her person, that he refused to do so, and that she then said that, if he would not aid her, she would use a catheter to produce it herself; that defendant was the father of her child, and had tried to persuade her not to commit an abortion; that he wanted to marry her, but that she was not so situated that she could marry him at the time, was admissible in contradiction of the dying declarations of the deceased that she used a catheter, prior to this conversation, at the direction of defendant, and furnished by him, such communication not being privileged within the meaning of the provisions of §505 Burns 1901, that physicians shall not be competent witnesses as to matters communicated to them as such by patients in the course of their professional business. *pp. 470, 471.*

SAME.—*Privileged Communications.—Physician and Patient.—Witnesses.—Criminal Law.*—A statement made by a patient to a physician after the physician had treated her and went to collect his bill,

Seifert *v.* State.

that she was not able to pay it, and, upon being asked if defendant would pay it, said he would not, that he had nothing to do with producing her condition and did not advise her to commit an abortion, was not a· privileged· communication within the meaning of §505 Burns 1901, and was improperly excluded in a prosecution against defendant for producing an abortion on such woman resulting in her death.  *p. 473.*

EVIDENCE.—*Dying Declarations.—Impeachment.—Abortion.*—Where in a prosecution for producing an abortion resulting in the death of the woman, dying declarations of the woman in which she admitted using a catheter upon her person to produce the abortion were admitted, the court erred in refusing an instruction to the effect that in determining what weight should be given to the dying declarations the jury might consider the fact that according to her own admission therein the declarant had used the catheter upon her person to produce an abortion.  *p. 474.*

From Wayne Circuit Court; *J. W. Headington*, Special Judge.

Joseph Seifert was convicted of producing a criminal abortion resulting in the death of the woman, and appeals.  *Reversed.*

*H. U. Johnson* and *T. J. Study*, for appellant.

*W. L. Taylor*, Attorney-General, *C. C. Hadley* and *Merrill Moores*, for State.

GILLETT, J.—Appellant was charged with producing a criminal abortion, resulting in the death of the woman. From a judgment of conviction he appeals to this court.

The first question presented is whether a person who procures an instrument for a woman, which he advises and directs her to use upon herself to produce a criminal abortion, can be convicted as a principal, where the woman, pursuant to such advice and direction, uses such instrument for such purpose, in the absence of the former, thereby causing her to miscarry and die.

Assuming, without deciding, that it was not the purpose of the legislature, in the enactment of §1857 Burns 1901, entirely to blot out the distinction between principals and accessories, we think that it may still be affirmed that ap-

pellant was properly charged as a principal. While the principal in the commission of a felony must be actually or constructively present at the time of its commission (1 Bishop, Crim. Law (8th ed.), §648; McClain, Crim. Law, §204), yet a person who causes such a crime to be committed through an innocent agent is deemed constructively present. McClain, Crim. Law, §§187, 207; 1 Bishop Crim. Law (8th ed.), §§648, 651; *Commonwealth* v. *Hill,* 11 Mass. 136; *Gregory* v. *State,* 26 Ohio St. 510, 20 Am. Rep. 774. This fiction of the constructive presence of the real instigator and promoter of the crime is indulged in a case where an innocent agent commits the act, because there would otherwise be no principal. This being the reason for the doctrine, it is evident that the test as to whether the former is a principal or an accessory does not depend upon whether the agent is morally innocent, but upon whether he is criminally responsible for the particular crime charged. As said by Mr. Bishop: "Since there must always be a principal, one is such who does the criminal thing through an innocent agent while personally absent. For example, when a dose of poison, or an animate object like a human being, with or without general accountability, but not criminal in the particular instance, inflicts death or other injury in the absence of him whose will set the force in motion, there being no one but the latter whom the law can punish, it of necessity fixes upon him as the doer." 1 Bishop, Crim. Law (8th ed.), §651.

It is evident in view of the provisions of §1997 Burns 1901, that the penalties of the next preceding section are denounced, not primarily, if at all, against the woman, but against the third person. *State* v. *Murphy,* 27 N. J. L. 112; *State* v. *Hyer,* 39 N. J. L. 598; *Moore* v. *State,* 37 Tex. Cr. 552, 40 S. W. 287; McClain, Crim. Law, §204. If she could be liable at all under the last mentioned section, it could only be as an accomplice to such third person, as held in *State* v. *McCoy,* 52 Ohio St. 157, 39 N. E. 316,

and that would require that such third person should be moved up to the degree of principal. Moreover, if the act, done with the criminal purpose, eventuates in the death of the woman, that is a substantive offense (*Montgomery* v. *State,* 80 Ind. 338, 41 Am. Rep. 815), and as it is not consummate until her death, it is evident that she can not become the principal, and that for want of some principal whom the third person may be regarded as an accessory to, the latter must be treated as a principal, or else we have the solecism of a felony without a principal. It is argued by appellant's counsel that there was no principal, and therefore no crime. The maxim, *qui facit per alium, facit per se,* is of extensive application in the criminal law, and, if the State's theory of the facts be assumed, it may be stated that appellant was clearly within the operation of the maxim as a working rule.

Complaint is made of the rulings of the trial court in admitting the dying declarations of the woman, taken in interrogatory form. The questions and answers complained of are as follows: "(3) Were you pregnant with a bastard child recently? A. Yes." "(10) When did you first tell Joe Seifert that you were pregnant by him? A. I don't know when it was." "(12) When you told Joe Seifert that you were pregnant by him, what did he say, if anything? A. He didn't say much about it; only he said he would help me get away with it, and I said all right. (13) What did he do, if anything, toward helping you to get away with it? A. He got a catheter and brought it to me. (14) What did he say, if anything, when he brought you the catheter? A. He didn't say anything. (15) Did you know what it was when he brought it to you? A. Yes, I'd seen them before. (16) Did you know how to use it? A. Yes." "(19) When did you use it the last time? A. About four months ago. (20) Where were you when you used it? A. At my home on Washington avenue, number 28." "(22) What, if anything, had you said to him and

he to you about your condition before you used it the last time? A. I told him, 'I am in trouble;' and he said, 'You will have to get out of it.' (23) When Mr. Seifert gave you the last catheter did you use the same? A. Yes. (24) Did he tell you to use it? A. Yes, he told me to use it."

It is not disputed that dying declarations are competent in prosecutions for causing death by criminal abortions, the element of death being a substantive part of the charge. *Montgomery* v. *State,* 80 Ind. 338, 41 Am. Rep. 815. Such declarations are admitted upon the ground of necessity. The necessity, however, does not depend upon the stress of the particular case, but upon the fact that ordinarily there is no other equally satisfactory proof of the circumstances connected with the fatal injury. Dying declarations being an exception to the rule excluding hearsay testimony, the above consideration marks, in a general way, the extent of the exception. "The declarant," says the supreme court of Alabama, "does not become a general witness. He can only speak of the transaction which causes the death, and such accompanying acts, statements and conduct as shed light on it; the *res gestae* in a strict sense." *Sullivan* v. *State,* 102 Ala. 135, 141, 15 South. 264, 48 Am. St. 22. Accordingly, it has quite frequently been held that testimony of prior difficulties and prior threats is incompetent. *Binns* v. *State,* 46 Ind. 311; *Jones* v. *State,* 71 Ind. 66; *Reynolds* v. *State,* 68 Ala. 502; *Warren* v. *State,* 9 Tex. App. 619, 35 Am. Rep. 745; *State* v. *Perigo,* 80 Iowa 37, 45 N. W. 399. There is much force in the suggestion that, "As soon as the limit fixed by absolute necessity is passed, the principle upon which the exception is based being exceeded, there is no longer any limit whatever, and dying declarations become admissable, not merely to prove the act of killing, but to make every homicide murder by proof of some old grudge." *State* v. *Shelton,* 47 N. C. 360, 364, 64 Am. Dec. 587. Prior difficulties and prior threats may not,

Seifert *v.* State.

however, have had any part in the killing, but the dying declarations complained of by appellant in this case, for the most part, lie at the basis of the controversy. The theory of the State is that the appellant furnished the deceased with a catheter, and incited her to use it to produce a criminal abortion. As a person occupying practically the position of an accessory before the fact, his criminal conduct, if he is guilty as charged, consisted in the furnishing of the instrument and in the inciting of the deceased to perform an abortion on herself. We can not consent to the view that the dying declarations must be confined to the time when deceased committed the act ·that resulted in an abortion, for that would leave appellant out of view entirely. The furnishing of the instrument and the inciting of the deceased to commit an abortion are as central and vital elements in the case as was the act of the deceased. In holding that declarations concerning all of these elements are proper we think that we are fully within the rule that the circumstances of the death must be the subject of the dying declaration.

We shall now refer to the questions and answers complained of more particularly. We need not rule on the motion to strike out questions three and ten and their respective answers, as the case will have to be reversed for other reasons, and appellant is already too far committed to the facts that said answers tend to establish to enable him to controvert them hereafter. It is the opinion of the writer that questions thirteen, fifteen, and sixteen, and the respective answers thereto, should have been suppressed, particularly question thirteen and answer; but it is the opinion of the other members of the court that, considering the declarations as a whole, there was no reversible error in permitting all of the questions and answers to be read that the trial court submitted to the jury.

We do not deem it necessary to decide whether the *corpus delicti* can be proved by dying declarations. The

abortion and the death as a result thereof were very clearly proved, and the only remaining question, in so far as the *corpus delicti* was concerned, was whether natural causes brought about the abortion or whether a criminal operation occasioned it. In view of the evidence of the two openings from the uterus into the abdominal cavity, the delay in calling a physician, and the statement of the deceased, made to the appellant just before her sickness, of her purpose to get rid of the child (see *Mutual Life Ins. Co.* v. *Hillmon,* 145 U. S. 285, 12 Sup. Ct. 909, 36 L. Ed. 706; *Commonwealth* v. *Trefethen,* 157 Mass. 180, 31 N. E. 961, 24 L. R. A. 235; *State* v. *Howard,* 32 Vt. 380; *State* v. *Dickinson,* 41 Wis. 299; *Boyd* v. *State,* 14 Lea 161; *Blackburn* v. *State,* 23 Ohio St. 146), we have concluded that the *corpus delicti* was so far proved as not to present any question of law to this court. See, upon the subject of the *corpus delicti* in cases of this character, *Campbell* v. *People;* 159 Ill. 9, 42 N. E. 123, 50 Am. St. 134; *State* v. *Williams,* 52 N. C. 446, 78 Am. Dec. 248 and note. And see, also, *Stocking* v. *State,* 7 Ind. 326.

It has been said that dying declarations are admitted to bring the manslayer to justice. It may be that there ought to be evidence reasonably warranting the inference of an unlawful homicide before dying declarations are admitted, but, such prior evidence existing, we perceive no reason why the declarations, when admitted, should not have a suppletory effect.

The statements of the deceased in her dying declarations were open to contradiction. *People* v. *Lawrence,* 21 Cal. 368; *Battle* v. *State,* 74 Ga. 101; *Felder* v. *State,* 23 Tex. App. 477, 5 S. W. 145, 59 Am. Rep. 777. Upon the trial of the case appellant sought to contradict the portions of said declarations that incriminated him by the testimony of a physician as to statements that the deceased had made to him. The physician, when called as a witness, testified that he had been the physician of the deceased for some

time, and that she called upon him for the purpose of receiving treatment about three months before her death. Upon the propounding of the next question, relative to said visit, the State objected, on the ground that the communication was privileged. In response to appropriate questions, the appellant then sought to show by said witness that after deceased had so consulted him, and after he had so advised her, she then stated to him, in an entirely separate and distinct conversation, that she desired him to perform a criminal abortion upon her person; that he refused to do so, and that she then said that if he would not aid her, she would use a catheter to produce it herself; that Joe Seifert was the father of her child, and had tried to persuade her not to commit an abortion upon her person; that he wanted to marry her, but that she was not so situated that she could marry him at that time. It is provided by statute in this State that "the following persons shall not be competent witnesses: * * * (4) Physicians, as to matter communicated to them as such, by patients, in the course of their professional business, or advice given in such cases." §505 Burns 1901. And see §1865, *supra.* Notwithstanding the broad language of the enactment, we think that a request to a physician to commit a crime is not privileged. *Hauk* v. *State,* 148 Ind. 238; *Coveney* v. *Tannahill,* 1 Hill 33, 37 Am. Dec. 287; *State* v. *Kidd,* 89 Iowa 54, 56 N. W. 263; *State* v. *Smith,* 99 Iowa 26, 68 N. W. 428, 61 Am. St. 219; 23 Am. & Eng. Ency. Law (2d ed.), 88. As said by Chief Baron Gilbert, relative to communications to attorneys: "Where the original ground of communication is *malum in se,* as if he be consulted on an intention to commit a forgery or perjury, this can never be included within the compass of professional confidence; being equally contrary to his duty in his profession, his duty as a citizen, and as a man." 1 Gilbert, Evidence, 277.

The matter of difficulty in this case is the segregation of the competent from the incompetent. We think, however,

that the questions asked were fairly calculated alone to develop that which was competent. If the deceased requested the physician to perform a criminal abortion upon her person, as the offer to prove tended to show, that fact could have been developed as a proper introductory fact, and that would furnish the basis for a showing in a negative way that the proper subject on which professional advice had been sought and given had no relation to an abortion and was no longer under discussion. This being shown, it would *prima facie* appear that the balance of the conversation was not privileged.

The statute under consideration is highly beneficent in its operation, and it should not be frittered away by permitting the answering of questions which tend to reveal that which should be kept inviolate. All doubtful points must be solved against the competency of the proposed testimony, but if counsel, by a line of questions, can develop the isolated point concerning which the court can say this is competent, and at the same time avoid the disclosure of that which should be kept sacred, it is his privilege to pursue that course. In the case of *McDonald* v. *McDonald*, 142 Ind. 55, where the court below has let in evidence of a disclosure to an attorney, although it was claimed that the conversation opened with a prior professional communication, this court held that the subsequent statement was competent, by way of admission, on the ground that the opening and subsequent statements were as separate and distinct as though they had been made at different times.

It is objected by the State that the evidence of the statements of the deceased that we have been discussing would not necessarily contradict anything in the dying declaration. The conversation with the physician was subsequent to the date that deceased fixed as the date that she used the catheter that she declared appellant furnished her, and therefore we think that the evidence offered would have been in contradiction of her declaration. If there were any

doubt upon this point we think that it ought to be solved in favor of appellant, as he was unable to cross-examine the declarant.

It is further shown by the record that after the deceased had, in a measure, recovered from the illness occasioned by the abortion, the same physician, who had performed proper professional service in the effort to relieve her from the consequences of such abortion, called upon her to collect the amount of his bill. The physician was asked by appellant's counsel whether at that visit he had any conversation with deceased except that which pertained to the collection of his bill. The witness answered: "None that I can recall; no more than a physician would have with a patient generally. —ask them how they were." In response to an appropriate question, appellant then proposed to prove that on that occasion the witness asked deceased about the payment of the bill, and that she said to him that she was not able to pay it; that he then asked her if Joe Seifert would pay it, and that she answered: "No, Joseph Seifert had nothing to do with producing my condition. He didn't advise it, and he didn't advise me to commit an abortion, and won't pay a dollar." The offer to prove was refused, and appellant excepted. The State had before called this witness, and proved by him the physical condition of deceased when he attended her, so there was nothing in the proposed evidence that was new except as to what she at that time said about appellant. We perceive no reason for excluding the evidence of such conflicting statement. The witness had not called on the deceased in a professional capacity, but on a business matter; she was aware of the object of his call, and neither sought nor obtained his advice. Even the relation had apparently ended at that time, since he was seeking compensation for his services. We think that it would be a perversion of the statute to hold that the communication in question was privileged. See *Bower* v. *Bower,* 142 Ind. 194.

At the proper time, appellant tendered an instruction to the effect that, in determining what weight should be given to the dying declarations, the jury might consider the fact that according to her own admission therein the declarant had used the catheter upon her person to produce an abortion. The court refused so to instruct, and appellant reserved an exception. The deceased was not strictly an accomplice (*Johnson* v. *State,* 2 Ind. 652), but the moral quality of the act and her connection with it were such as to entitle the appellant to have said instruction given to the jury. *State* v. *McCoy,* 52 Ohio St. 157, 39 N. E. 316; *Commonwealth* v. *Boynton,* 116 Mass. 343; 1 Cyc. Law & Proc., 190, 191, and cases there cited; 1 Ency. Ev., 60. And see *Union, etc., Ins. Co.* v. *Buchanan,* 100 Ind. 63, 81; *Stevens* v. *Leonard,* 154 Ind. 67, 77 Am. St. 446.

For the errors mentioned, the judgment is reversed, and a new trial ordered.