GARRISON *v.* STATE OF INDIANA*

[No. 26,257.   Filed January 8, 1935.]

* Note—Published out of line because not received sooner by reporter.

*Paul E. Ashby,* and *Lloyd J. Voyles,* for appellant.

*Philip Lutz, Jr.,* Attorney-General, and *James D. Sturgis,* Deputy Attorney-General, for appellee.

HUGHES, J.—This is an appeal from a conviction based upon the following affidavit, omitting formal parts:

"ALBERT M. MORRIS being duly sworn upon his oath says that William Garrison, on or about the 20th day of September, 1930, at said county and state, as affiant verily believes, did then and there unlawfully, knowingly, designedly and feloniously obtain from the West Side Building and Loan Association, a corporation, by false pretenses and representations, certain money, to-wit: twenty-six hundred forty-eight dollars twenty cents ($2648.20), the same then and there being the

property of said West Side Building and Loan Association, in the manner and form and by the unlawful and felonious means as follows, to-wit:

"The said William Garrison did then and there unlawfully, knowingly, designedly and feloniously aid, encourage, counsel, command, hire and procure one George Isaac to do and perform the following unlawful felonious acts, to-wit:

"To pretend and represent, falsely and fraudulently, to said West Side Building and Loan Association that he, the said George Isaac, then and there was the owner of a certain lot and parcel of real estate in Vanderburgh county, Indiana, on which there were improvements consisting of five (5) room modern dwelling house and a two (2) car garage of the approximate value of sixty-five hundred dollars ($6500.00) and that said dwelling house was the house then and there located on a street known as Blackford avenue, and was the first house east of Weinbach avenue on the north side of said Blackford avenue; to apply to said West Side Building and Loan Association for a mortgage loan in said above described sum of money on said above described real estate and improvements and to execute, and to cause the wife of the said George Isaac, to-wit: Helen M. Isaac, to execute a mortgage to said West Side Building and Loan Association, to secure said loan and to represent and pretend, falsely and fraudulently, to said West Side Building and Loan Association that said mortgage so executed, as aforesaid, was a valid mortgage on said five (5) room modern dwelling house and two car garage hereinbefore described.

"That, he, the said George Isaac, pursuant to the counsel, encouragement and command of the said William Garrison, as aforesaid, did then and there make said false and fraudulent representations and pretenses to said West Side Building and Loan Association, as aforesaid, and did then and there apply to said West Side Building and Loan Association for said loan, as aforesaid, and did then and there execute, and cause the said Helen M. Isaac to execute, said mortgage to said West Side Building and Loan Association to secure said loan, as aforesaid, and did then and there deliver said mortgage so executed to said West Side Building and Loan Association.

"That said representations and pretenses so made to said West Side Building and Loan Association by the said George Isaac were false, and the said William Garrison then and there well knew them to be false, in this, to-wit:

"The said George Isaac was not then and there the owner of said lot and parcel of real estate in said county and state on which there were improvements consisting of said five (5) room modern dwelling house and said two (2) car garage of the approximate value of sixty-five hundred dollars ($6500.00) and then and there being the said first dwelling house east of Weinbach avenue on the north side of said Blackford avenue, as aforesaid, and the said mortgage was executed by the said George Isaac and Helen M. Isaac to said West Side Building and Loan Association, as aforesaid, was not a mortgage on said above described real estate with improvements thereon, as aforesaid.

"That the said West Side Building and Loan Association, relying upon and believing the said false and fraudulent representations aforesaid to be true, was then and there and thereby induced to, and did, grant the application of said George Isaac for said loan and then and there delivered to said George Isaac said sum of money, to-wit: twenty-six hundred forty-eight dollars twenty cents ($2648.20) the same being the property of said West Side Building and Loan Association as aforesaid, and the said George Isaac did then and there deliver said sum of money so obtained from said West Side Building and Loan Association, as aforesaid, to the said William Garrison.

"That the said William Garrison, in manner and form and by the unlawful and felonious means aforesaid, did then and there unlawfully, knowingly, designedly, and feloniously obtain from said West Side Building and Loan Association said sum of money, to-wit: twenty-six hundred forty-eight dollars twenty cents ($2648.20), the same being the property of said West Side Building and Loan Association as aforesaid, by said false pretenses, as aforesaid, then and there being contrary to the form of the statute, in such cases made and provided, and against the peace and dignity of the state of Indiana."

694

The errors relied upon for reversal are as follows: (1) The court erred in overruling appellant's motion to quash the affidavit; (2) the court erred in overruling appellant's motion for a new trial.

The appellant assigns as reasons for a new trial the following: (1) The verdict of the jury is contrary to law; (2) the verdict of the jury is not sustained by sufficient evidence.

He also assigns two reasons why his motion to quash the affidavit should have been sustained; the first being that the facts stated in the affidavit do not constitute a public offense; and the second being that the affidavit does not state the offense with sufficient certainty.

It is first asserted that the affidavit should have been quashed because there was no description of the real estate set out in the affidavit. This objection is highly technical and can not be sustained. From a reading of the affidavit, one can readily obtain a description of the property and its location and is certainly specific enough to charge the defendant with knowledge of the real estate intended.

It is also contended that the affidavit is ambiguous. We do not think so. The affidavit charges the appellant with obtaining money under false pretenses and sets out in detail the means by which the money was obtained.

No greater certainty is required in criminal, than in civil pleadings, and the law does not require technical niceties in the averment of an affidavit or indictment. The charge should be sufficiently certain that the court and the jury may know what they are to try, and inform the defendant of the character of the proof which would be brought against him, and to bar another prosecution for the same offense. *State* v. *Ensley* (1912), 177 Ind. 483, 97 N. E. 113; *Mayhew* v. *State*

(1920), 189 Ind. 545, 128 N. E. 599. When measured by the foregoing rules of construction we think the affidavit in the instant case is sufficient.

The affidavit is based upon §2947, Burns 1926, §10-2103, Burns 1933, §2747, Baldwin's 1934, relating to obtaining money under false pretense. The ■ ■ appellant contends that the language of the affidavit follows the language contained in §2028, Burns 1926, §9-102, Burns 1933, §2243, Baldwin's 1934, and charges the appellant with being an accessory before the fact, and that as George Isaac is not charged with falsely and fraudulently making the representations charged to the appellant, the appellant can not be found guilty. In other words, if no guilty conduct is charged to the principal, then no guilt can be charged against the accessory. In the instant case, is the appellant charged as principal or as an accessory before the fact? In our judgment he is charged as a principal and used Isaac as his agent, and, as we think, an innocent agent.

Section 2028, Burns 1926, is as follows:

"*Accessory before the fact.*—Every person who shall aid or abet in the commission of a felony, or who shall counsel, encourage, hire, command or otherwise procure a felony to be commited may be charged by indictment or affidavit, tried and convicted in the same manner as if he were a principal, either before or after the principal offender is charged, indicted or convicted; and, upon conviction, he shall suffer the same punishment and penalties as are prescribed by law for the punishment of the principal."

The words "either before or after the principal offender is charged, indicted or convicted," are significant. It presupposes that there is a "principal offender," and another who is "an accessory before the fact." In the instant case, however, the appellant is charged as

being the moving actor from the beginning to the end of the transaction but using another party to accomplish his purpose. The evidence clearly shows that the appellant was the principal offender and that Isaac was innocent of the criminal purpose that the appellant had in his mind.

"If a person causes a crime to be committed through the instrumentality of an innocent agent, he is the principal in the crime, and punishable accordingly, although he was not present at the time and place of the offense, as is ordinarily required to render one guilty as a principal. As between him and the innocent agent, there is no such relation as principal in the first and second degree or principal and accessory; he alone is the guilty party."

16 C. J. 124-128; and many cases cited.

In the instant case, Isaac knew of course, what he was doing, but as far as the evidence shows, he had no intention of any felony or furthering a felony and therefore not guilty of any felony.

In the case of *Seifert* v. *State* (1903), 160 Ind. 464, 466, 67 N. E. 100, the court said:

"While the principal in the commission of a felony must be actually or constructively present at the time of its commission, . . . yet a person who causes such a crime to be committed through an innocent agent is deemed constructively present. . . . This fiction of the constructive presence of the real instigator and promotor of the crime is indulged in a case where an innocent agent commits the act, because there would otherwise be no principal."

Again, it is said:

" 'Since there must always be a principal, one is such who does the criminal thing through an innocent agent while personally absent. For example, when a dose of poison, or an animate object like a human being, with or without general accountability, but not criminal in the particular instance, inflicts death or other injury in the absence of him whose will set the force in motion, there being no

one but the latter whom the law can punish, it of necessity fixes upon him as the doer.' Bishop Criminal Law, 8th Edition, §651."

It appears from the evidence in the case that the appellant, Garrison, represented to George Isaac that he was buying some real estate and that he could not take title in his name, but that he would give Isaac one hundred dollars if he would take the title in his name and then make and procure a loan on the property. Isaac agreed to this. Garrison took Isaac and showed him a certain five-room house on Blackford street in Ellenwood place, Vanderburg county, Indiana, as the property he was buying and having the title put in Isaac's name. The house was located on lot nine and Garrison was buying and did buy lot eight, which was a vacant lot. The title to the vacant lot number eight was placed in Isaac's name. Isaac had never made an application for a loan on property. Garrison wrote out details for him to follow and had him make application for a loan. Garrison first took Isaac to the the Howell Bank and then to one or two other banks, but finally to the West Side Building and Loan Association. Garrison did not go in the banks, but had Isaac do so. Isaac made an application for a loan with the Building and Loan Association for two thousand seven hundred dollars ($2700.00), all as directed by Garrison.

The building and loan association examined lot nine upon which the house was situated, and which had been described by Isaac as the property he was offering for security. This was the property Garrison showed Isaac and represented to him he was buying. The building and loan association reported to Isaac that a loan of two thousand seven hundred dollars ($2700.00) would be granted and for him to bring all necessary papers, including deed, abstract, and insurance papers to the office. Isaac notified Garrison to meet him at the build-

ing and loan association office. Garrison came to the office with Mr. and Mrs. Pittman, the parties from whom he was buying the lot. They gave the deed and papers to Isaac. Neither Garrison nor either of the Pittmans went into the office. They remained outside in a car. Garrison told Isaac to go on in the office as Mrs. Pittman, being about seventy-two years of age, could not walk fast and it was about time to close the office.

Isaac delivered the deed to the building and loan association, believing it was a deed to the lot upon which the house was situated, whereupon the building and loan association gave and delivered to Isaac two checks— one for fifty-seven dollars and eighty cents ($57.80), and one for two thousand six hundred and forty-eight dollars and twenty cents ($2648.20). Pursuant to Garrison's direction to Isaac, he had the two thousand six hundred forty-eight dollars and twenty cents ($2648.00) divided into two checks—one for seven hundred dollars ($700), one for one thousand eight hundred forty-eight dollars and twenty cents ($148.20) and the balance, one hundred dollars ($100), in cash. Isaac retained one hundred dollars ($100) in cash and delivered the seven hundred dollar ($700) check to Mrs. Pittman at Garrison's request just outside the office. Then Garrison took Mr. and Mrs. Issac to a drug store on the corner of Twelfth avenue, and Isaac delivered the one thousand eight hundred forty-eight dollars and twenty cent ($1848.20) check to Garrison. This check, at Garrison's request, was payable to the order of James Dougan. Garrison had represented that Dougan was a contractor who had constructed the house and told Isaac to put this fact in his application. The evidence shows that Dougan was not a contractor, but a man who followed the races and to whom money was owing by Garrison.

Isaac asked Garrison why he should deliver the Dougan check to him, but he said he would take care of Dougan and the money. He at least took care of the money.

Garrison told Isaac that he would collect the rent from the property and turn it over to Isaac to pay the building and loan association dues. He did turn over some money to Isaac, but none of it came from the rent.

The directors and officers of the building and loan association later learned that the loan was made on a vacant lot, and called Isaac's attention to this fact. He then saw Garrison and told him. He said he knew it but he and Mrs. Pittman would straighten it up.

The evidence shows that Garrison was dealing with reference to the vacant lot eight and at no time with reference to lot nine with the Pittmans and it further shows that the Pittmans did not know that the building and loan association thought it was making a loan on lot nine with the house. They did not know what representations had been made in the application for the loan. The evidence also shows that Isaac thought he was getting a loan on the lot upon which the house was situated.

In the instant case, the actual promoter and instigator and the one who put the scheme in motion and received the benefits was the appellant; and, under the evidence, the principal. The evidence shows that Garrison was just outside the office of the building and loan association when Isaac went in to close the deal, and when he had delivered the check to Mrs. Pittman, he went to the drug store with Isaac and received the other check. He took Isaac to the office and apparently had him under his complete control all the time from the inception of the transaction.

We have carefully read the evidence in the case and

find it to be sufficient to sustain the verdict and the verdict is not contrary to law. The court did not commit error in overruling the appellant's motion to quash the affidavit.

Judgment affirmed.