CASE 111—INDICTMENT—FEBRUARY 25.

# Franklin v. Commonwealth.

APPEAL FROM METCALFE CIRCUIT COURT.

1. IMPEACHMENT OF WITNESSES—JURY ARE JUDGES OF. CREDIBILITY.—
However strong may be the testimony impeaching the character of the witnesses for the prosecution in a criminal case the jury are still the judges of the credibility of the witnesses, and this court will not set aside a verdict of guilty upon the ground that it is against the evidence.

2. EVIDENCE SHOWING MOTIVE FOR CRIME.—It is often competent to show the commission of one offense for the purpose of establishing a motive for committing another and distinct offense.

Upon a trial for murder it was competent for the prosecution to prove by the daughter of the deceased, as showing a motive for the crime, that the accused "mistreated her, and her father made her get out a bastardy warrant for him."

3. SAME—PREJUDICIAL ERROR.—The prosecution having proved that the accused had compromised the bastardy proceeding, it was competent for him to show that he said at the time that he did not compromise because he was guilty, but was advised that he had better do so, as the family of the mother of the child "would swear lies against him." But the rejection of this evidence did not prejudice the accused, as it could not have controlled the verdict.

4. INSTRUCTIONS TO JURY.—The court properly refused to instruct the

Franklin v. Commonwealth.

jury as to their right to credit or discredit the testimony of any witness, when from the facts before them they were satisfied the witness was unworthy of belief.

5. CONTINUANCE.—The action of the court in refusing a continuance asked on the ground of the absence of leading counsel for defendant and of material witnesses was not prejudicial, as the record shows a thorough preparation by the defense and a presentation of the case to the jury covering every point upon which a defense could have been made, and the testimony of the absent witnesses would have been merely cumulative.

J. H. C. SANDIDGE FOR APPELLANT.

1. The court erred in refusing to instruct the jury that they are the sole judges of the credibility of the witnesses.

2. The court should have granted appellant's motion for a continuance.

3. The Commonwealth had no right, for the purpose of showing motive, to prove that defendant had committed crimes and misdemeanors other than that charged in the indictment.

4. It was error not to withdraw from the jury improper statements made by the Commonwealth's attorney in his argument. (Benningfield v. Commonwealth, 13 Ky. Law Rep., 446; Cupps v. Commonwealth, 9 Ky. Law Rep., 877; Hilton v. Commonwealth, 13 Ky. Law Rep., 158.)

5. It was error to permit the jury to separate during the trial and to attend church and listen to a sermon in which the subject of murder and murder trial was discussed.

W. J. HENDRICK, ATTORNEY GENERAL, FOR APPELLEE.

1. The affidavit for a continuance is defective in not showing that the defendant will be able to procure the attendance of the witnesses at the next term of the court, and in failing to allege that he can not prove the facts that the absent witnesses will testify to by any other witness who may appear. (Wharton's Crim. Law, 3022; Am. and Eng. Enc. of Law, Title "Continuance;" Earp v. Commonwealth, 9 Dana, 302; Thompson v. Abbott, 11 Ia., 193; Eames v. Henderson, 22 Ill., 628.)

2. The action of the sheriff in taking the jury to church on Sunday can not be complained of upon appeal, as no objection was made until it was taken in the motion for new trial, which was too late. (Kennedy v. Commonwealth, 14 Bush, 340.)

3. Only such statements of the Commonwealth's attorney in argument, as were excepted to at the time, can be considered. (Kennedy v. Commonwealth, 14 Bush, 340.)

As the attorney admitted his error as to the statements excepted to this was equivalent to a withdrawal of them.

4. The court properly refused to instruct the jury that they were the sole judges of the credibility of the witnesses.

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

The appellant was indicted in the Metcalfe Circuit Court for the murder of Elisha Smith. The venue was changed to the Cumberland Circuit, where on the trial a verdict of guilty was returned fixing his punishment at imprisonment in the State prison for life. The prosecution has been pending for near ten years, with five jury trials, three of which were mistrials and two resulting in a conviction for murder. The first conviction was set aside, and at a subsequent term a like conviction was had, from which this appeal has been taken.

Counsel for the accused has discussed the testimony at some length, and if, as contended, the witnesses for the State, some of whom were eye witnesses to the killing, are not to be believed, the verdict in this case should have been not guilty.

The principal testimony for the prosecution comes from the three daughters of the dead man, one of whom swears that she saw the accused with pistol in hand firing at her father, and going to his relief the old man exclaimed: "*He has shot me to pieces;*" and died in a few moments. His other daughters reached their father in a few minutes after their sister, and he said to them that Austin Franklin shot him. The witnesses have been attacked in various ways as being unworthy of belief. The one who says she saw the shooting is shown to be a common prostitute, and to have made statements to divers persons to the effect that she did not know who shot her father. The other girls have made, as the testimony shows, many conflicting statements directly at

variance with their testimony on the trial, and some of them indicating a purpose to punish the accused, although they believed him innocent; in fact, the testimony impeaching the character of these girls is as strong as the defense could well have made it, and yet the jurors, who were the sole triers of the facts, believed their statements to be true, and evidently based their verdict of guilty on their testimony. It is difficult for a court not in the presence of witnesses who are being examined in a case like this, to judge of the weight the testimony should have by reason of the conduct of the witnesses, and their manner of detailing the facts upon which the charge is based, and the more difficult to explain what importance should be attached to testimony introduced for the purpose of assailing the character of the witnesses on the adverse side, either by showing general bad reputation or by proof of conflicting statements. The manner and bearing of the witnesses when under examination must necessarily impress the jury the one way or the other, and as this court is deprived of knowing the history of the witnesses, their manner and bearing when testifying, as such facts can not well be spread on the record, the necessity arises for making in this class of cases the jury the sole judges of such questions, and after a careful reading of the testimony we are far from saying that the cause shows an absence of proof authorizing the conviction.

This case had its origin in the County of Metcalfe, and while the deceased was a man of the lower walks of life, and had but little personal influence, the accused was given a trial in an adjoining county, where he had every opportunity to disprove the case made against him, and

where no influences existed to prejudice his trial in any way. While the burden was on the State to show his guilt beyond a reasonable doubt, it appears that no one of the five juries could agree as to his innocence, and the trial judge, on his first conviction, seeing that it might be possible the daughters of the dead man were disposed to make the accused the victim without regard to his guilt, granted him a new trial, and every opportunity, it seems to us, was afforded the accused, to remove not only the suspicion against him, but the positive testimony of those who saw the shooting. The verdict is not against the testimony.

This murder originated, doubtless, from the fact that the accused had been arrested on a bastardy warrant at the instance of the deceased, charging him with being the father of a child the daughter of the deceased had given birth to; and, although settled, was followed by threats on the part of the accused towards the deceased for having him arrested.

It is insisted by counsel for the accused that it was incompetent to show by the witness (the daughter) that she had been badly treated by the accused, with a view of showing a motive on the part of the accused to commit the crime. The witness stated that "the accused had mistreated her and her father made her get out a bastardy warrant for him, and he compromised by paying her (the witness) fifty dollars." Threats were then shown by other witnesses to have been made against the deceased by the accused, growing out of this settlement, and we think it competent as showing a motive on the part of the defendant to take the life of the deceased. The commission of one offense is often allowed to establish a

motive for committing another and distinct offense. It may be shown where one is charged with passing counterfeit money, knowing it to be counterfieit, that the accused had before that passed similar bills knowing them to be spurious. This is allowed to show the intent or the motive prompting the commission of the act.

In Stout v. The People, 4 Parker's Criminal Reports, 71, the prisoner was indicted for the murder of the husband of A. It was held competent to show that the prisoner was seen in bed with the wife of the deceased, as furnishing a motive for the commission of the crime.

In the case of Com. v. Merriam, 14 Pickering, 518, on an indictment for adultery, testimony of an improper familiarity between the defendant and the same woman was held competent. It being competent to show a bad feeling between the accused and the deceased, by reason of the relation of the former with his daughter, there was no reason why the accused was denied the right to show that he said at the time he did not compromise because he was guilty, but was advised that he had better do so, as the Smiths would swear lies against him. This testimony, if admitted, could not have controlled the verdict, but on the contrary conduced to show the hatred that would likely arise on the part of the accused, by reason of his being required to pay this money when innocent of the charge, and in this way sustain the theory of the prosecution.

It is claimed that an instruction should have been given the jury as to their right to credit or discredit the testimony of any witness, when from the facts before them they were satisfied the witness was unworthy of belief. An instruction of this character was asked and

refused. We must assume that those comprising the jury were men of ordinary intelligence, and knew without being told they were not required to believe the statements of the witness to be true merely because they were made under oath. This record is mostly made up of matter impeaching the character of witness after witness for truth and veracity, and in showing conflicting statements to have been made by them in reference to the same important fact. The jury knew the purpose of this testimony, and that they were not seated in the box to believe every statement made by a witness, whether true or false. Besides, the fact of the trial judge calling the attention of the jury to the fact that they were not compelled to believe all was said, would induce the jury to suppose the court was of the opinion that witnesses had made false statements, and it was therefore his duty to warn them upon that subject, or to inform them they were the sole judges of the credibility of the witnesses. Such an instruction has heretofore been condemned, and when given often misleads the juror in the consideration of the facts.

It is said further, that the case should have been continued because of the absence of leading counsel for the defense and of two or more witnesses. These witnesses, if present, would have stated what was proven by witness after witness for the defense, and the entire record shows a preparation by the defense and a presentation of the case to the jury covering every point upon which a defense could have been made. Arguments were made by counsel for the State that evidenced much zeal in the effort to convict, but nothing transpired that would require a reversal, on account of the conduct of the prose-

·cution, or would justify the court in saying they had gone beyond the bounds of legitimate argument.

More than one counsel appeared for the accused. His case was fully prepared and doubtless ably presented. If influences existed to improperly control the minds of the jury, there are more reasons for looking to them as coming from the defense, by reason of the position of the accused in his neighborhood, than from the humble people whose wrongs the State has at last vindicated by this prosecution.

There is some suggestion made as to the attendance at church by the jury on the Sabbath while this case was being tried, and of remarks made by the minister on the subject of murder. There is nothing in the record to warrant the statement, or showing in any way that this accused has not had a fair trial; in fact, the testimony conduces to show that he seduced the daughter and then murdered the father.

Judgment affirmed.