Decided 2 January, 1906.

## STATE *v.* MARTIN.

83 Pac. 849.

EVIDENCE OF OTHER CRIME THAN THAT CHARGED.

1. Within the rule concerning evidence of other offenses than the one charged, it is competent to claim, and offer evidence to prove, that a defendant on trial for homicide had been physically intimate with an unmarried daughter of the deceased under the age of consent, that she was consequently with child, and that deceased had threatened to prosecute defendant for such conduct, and that the latter was engaged to marry another girl. This is all competent to show a motive for the killing, proper precaution being taken to advise the jury as to the purpose of the evidence.

WITNESS—IMPEACHING BY CONTRADICTORY STATEMENTS.

2. Under Section 853, B. & C. Comp., authorizing the impeachment of a witness by evidence that he has made previous statements inconsistent with his testimony, a witness in homicide cannot be impeached by the production of a transcript of the testimony given by him at the inquest, nor by the reading of the stenographer's notes of such testimony where the stenographer is unable to say that his notes contain all that the witness stated at the inquest.

EXPERT WITNESS—CERTAINTY OF OBJECTION.

3. An objection to a question for incompetency does not support an argument that the witness was not shown to be qualified to express an opinion on the subject referred to, there being a difference between the competency of a question and the competency of the witness.

From Umatilla: WILLIAM R. ELLIS, Judge.

Grover Martin appeals from a conviction of manslaughter.        AFFIRMED.

For appellant there was a brief over the names of *Carter, Raley & Raley* and *Peterson & Peterson*, with oral arguments by *Mr. James Henry Raley* and *Mr. Samuel Davidson Peterson*.

For the State there was a brief over the names of *Gilbert Walter Phelps*, District Attorney, and *John McCourt*, with an oral argument by *Mr. Andrew Murray Crawford*, Attorney General, and *Mr. Phelps*.

MR. JUSTICE MOORE delivered the opinion of the court.

The defendant, Grover Martin, was indicted for the crime of murder in the first degree, alleged to have been committed in Umatilla County May 18, 1905, by killing one O. N. Preston, and, having been tried therefor, he was convicted of manslaughter, and sentenced to 10 years' imprisonment in the penitentiary, from which judgment he appeals.

His counsel contend that an error was committed in permitting the district attorney, over objection and exception, to detail to the jury, in his opening statement, circumstances pointing to the defendant's participation in the commission of a crime other than that with which he was charged, and in allowing testimony to be introduced tending to prove such statements. In order to illustrate the legal principle insisted upon, a brief statement of the facts involved is deemed essential. The defendant, who is 20 years old, was for several months prior to the homicide studying dentistry with one Dr. Fulton in an office at Milton, where he was visited about May 1, 1905, by the deceased, and informed that he had seduced the latter's daughter. This he denied, and on the 15th of that month he was again visited by the deceased, who reiterated the charge, and exposed the butt of a pistol in his pocket. The defendant, again protesting his innocence, promised to visit this daughter and make some arrangement to avoid the shame incident to her condition. This promise was not kept, and three days thereafter, while the defendant was calling at a neighbor's house, the deceased, who lived across the road, invited him out, whereupon a combat ensued in the highway. The defendant knocked the deceased down and continued to pound him in the face until the neighbor interfered. The deceased then arose and picked up a stone, but the neighbor took it from him, and as he was standing in the road the defendant shot

him, claiming that at that time Preston made a demonstration as if to draw a pistol, when in fact, he had none. The deceased died in a few hours from the effects of the shot he received. The following is a summary of the statement and testimony complained of : The district attorney, detailing to the jury the facts which the State expected to prove, was permitted to say, in effect, that October 19, 1904, the defendant had illicit sexual intercourse with a daughter of the deceased. Minnie Preston, the daughter referred to, who is 16 years old, appearing as a witness for the State, testified that she had kept company with the defendant, and that she visited a dental office at Milton October 19, 1904, and, the proprietor being absent, the defendant did some work on her teeth, when he locked the door, pushed her into the dental chair, and had sexual intercourse with her. Dr. Alice Jent, a practicing physician, as a witness for the State, testified that Minnie Preston called upon her professionally, and, though she made no physical examination of the patient, the latter informed her that she was enceinte. Viola Preston, Minnie's mother, referring to this daughter, said that she was in the family way.

1. It is argued by defendant's counsel that for the purpose of showing the aggressor in a combat, it is competent for the prosecution, in a criminal action, to prove that on a previous occasion the parties participating in the encounter had had trouble, but that it is improper to enter into an examination of the antecedent difficulty in detail to determine who was in the wrong; that the testimony as to the condition of Minnie Preston related to the defendant's alleged commission of a crime, wholly unconnected with the offense for which he was being tried; and that such testimony and the statement made by the district attorney diverted the minds of the jurors, thereby inducing the consideration of an immaterial matter, to the

prejudice of the defendant. The rule is quite general that evidence of the commission, by the defendant in a criminal action, of another offense, wholly unconnected with the crime for which he is being tried, is inadmissible on the ground that such evidence tends to mislead the jury, creates in their minds a prejudice against the prisoner, and requires him to answer a charge for which he is not supposed to have made preparation: 1 Greenleaf, Ev. (15 ed.), § 52; Underhill, Crim. Ev. § 87; *State* v. *Baker*, 23 Or. 441 (32 Pac. 161); *State* v. *O'Donnell*, 36 Or. 222 (61 Pac. 892); *State* v. *McDaniel*, 39 Or. 161 (65 Pac. 520). To this rule there is, among others, the well-recognized exception that relevant evidence is not inadmissible because it may indirectly tend to establish the prisoner's guilt of another dissimilar crime, if there exists a union of motives in the commission of the separate offenses: Underhill, Crim. Ev. § 90. This text-writer, illustrating the deviation from the rule adverted to, says: Thus the fact that the evidence introduced to prove the motive of the crime for which the accused is on trial points him out as guilty of an independent and totally dissimilar offense is not enough to bring about its rejection, if it is otherwise competent. Under this exception to the general rule, where facts and circumstances amount to proof of another crime than that charged, and it appears probable that the crime charged grew out of the other crime, or was in any way caused by it, the facts and circumstances may be proved to show the motive of the accused."

In *State* v. *Reed*, 53 Kan. 767 (37 Pac. 174, 42 Am. St. Rep. 322), the defendant being tried for murder, testimony was admitted tending to show criminal intimacy between him and the wife of the deceased. It was contended that, as the killing was admitted, the motive could be shown in a general way, but that a detailed inquiry necessarily created a new issue. It was ruled, however, that such

evidence was admissible; the court saying: "A detailed inquiry was made, and a large volume of testimony was taken. It may be said, however, that this was due, to a large extent, to the fact that an undue intimacy between these parties was denied by the defendant. The testimony of the illicit relation, however, if it existed, was receivable in evidence as tending to show the motive of the defendant in killing the deceased." In *Webb* v. *State*, 73 Miss. 456 (19 South. 238), it was held on the trial of a person charged with murder that evidence tending to show that the accused had seduced a sister of the deceased was admissible from which a motive for the commission of the crime charged might be inferred. In *Commonwealth* v. *Ferrigan*, 44 Pa. St. 386, the defendant being tried for murder, it was held that evidence of his adulterous intercourse with the wife of the deceased was admissible to prove a motive for the crime involved. In *State* v. *Larkin*, 11 Nev. 314, on the trial of an indictment for murder, it was held that evidence of illicit relations between a witness and the deceased and between such witness and the prisoner was admissible as tending to prove a motive for the killing. So, too, in *Morrison* v. *Commonwealth*, 24 Ky. Law Rep. 2493 (74 S. W. 277), on the trial of an indictment for murder, it was held that evidence of the prisoner's improper relations with a sister of the deceased was admissible as tending to show a motive for the commission of the crime charged. In support of the exception that evidence of the prisoner's participation in other offenses is admissible to prove a motive for the commission of the crime for which he is being tried, see, also, *People* v. *Pool*, 27 Cal. 572; *People* v. *Walters*, 98 Cal. 138 (32 Pac. 864); *Fraser* v. *State*, 55 Ga. 325; *Franklin* v. *Commonwealth*, 92 Ky. 612 (18 S. W. 532); *State* v. *Pancoast*, 5 N. D. 516 (67 N. W. 1052, 35 L. R. A. 518); *State*

v. *Williamson*, 106 Mo. 162 (17 S. W. 172); *Beberstein* v. *Territory*, 8 Okl. 467 (58 Pac. 641).

In the case at bar, the defendant having been indicted for the crime of murder in the first degree, the written accusation involved the elements of malice, premeditation and deliberation, to determine which necessitated the introduction of testimony on the part of the State tending to prove the charge as laid. The imputation of seduction of an unmarried female of previous chaste character, if established in a criminal action involving that charge, subjects the man found guilty thereof to punishment by imprisonment, unless the parties marry subsequent to the commission of the offense: B. & C. Comp. § 1921. It is stated in the brief of appellant's counsel that at the time of the homicide the defendant was keeping company with another young woman who lived near Milton, to whom, the testimony tended to show, he was presumably engaged to be married. Assuming this to be so, it is improbable that he would willingly marry Miss Preston, and hence, if he was found guilty of seducing her, a sentence of imprisonment confronted him, which was threatened by her father, who, as the testimony shows, when he first called upon the defendant, informed him of his daughter's condition, accused him of being responsible therefor, and told him that he "would have to do something about it * * or be put behind the bars." The defendant's unwillingness to marry Miss Preston and the consequences that might result to him from his refusal to enter into that relation with her, by being imprisoned, which punishment was threatened, might supply the motive that induced the taking of the life of the deceased. As the formal charge of murder in the first degree made motive an element to be considered by the jury in determining the state of the defendant's mind towards the deceased prior to and at the time of the homicide, which inducement might be implied

from the testimony so objected to, no error was committed in the introduction thereof. Such testimony being admissible, no error was committed in permitting the district attorney, in his opening statement to the jury, briefly to allude to the facts which the State expected to prove at the trial.

Whether or not, to determine the existence of a motive for the commission of a crime, the admission of testimony tending to show that a defendant in a criminal action has committed other independent offenses, can be carried to the extent allowed in *State* v. *Reed*, 53 Kan. 767 (37 Pac. 174, 42 Am. St. Rep. 322), to which attention has been called, is not necessary to a decision herein, for in the case at bar no "detailed" inquiry was even attempted by the State to prove the defendant guilty of seduction ; the testimony on that subject and the statement of the district attorney being general only. The testimony so objected to and the statement based thereon were only such as tended to show the information upon which the deceased acted in demanding that the defendant do something to mitigate the injury it was claimed he had inflicted, and to diminish the resulting disgrace it was insisted he had caused, or, failing in this respect, to suffer the consequence of his wrong. To show that the jury must have understood the purpose for which this testimony was received, the court, in its general charge, said :

"Some evidence has been introduced in this case which might tend to show that defendant committed a crime in his relations with the daughter of the deceased, but I instruct you that defendant is not on trial here for any such crime, and in this case you must not in any manner allow that evidence to prejudice you against the defendant, nor can you consider that evidence as going to show defendant to be a bad man or a good man, or a moral or immoral man. The only purpose for which you can consider such evidence is in relation to the question : What,

if any, motive deceased had for attacking defendant, or what, if any, motive defendant had for seeking or attacking the deceased?"

When we take into account the meager statement by the district attorney of the defendant's possible commission of an independent offense, the slight testimony offered upon that subject, and the careful instruction in relation thereto, it is quite evident that the jury were not misled thereby or prejudiced against the defendant, and that they considered such statement and testimony only to determine the motive of the respective parties to the combat which resulted in Preston's death.

2. Minnie Preston, appearing for the State, testified that she witnessed the combat between her father and the defendant, detailing the position occupied by each immediately preceding and at the time the fatal shot was fired, and also stated, on cross-examination, that she was a witness at the coroner's inquest held the morning after the homicide, and had there given no testimony variant from that uttered at the trial herein, denying that she testified at such inquest relating to the positions respectively assumed by her father and the defendant, as imputed to her by the defendant's counsel. This witness was then attempted to be impeached by a duly authenticated transcript of what purported to be the testimony given at such inquest, but before tendering such writing to her the stenographer who took the evidence received at the inquest, appearing as defendant's witness, was unable to say that his notes of the testimony contained an accurate statement of what the daughter of the deceased asserted under oath before the coroner. The shorthand reporter, alluding to the condition of such witness and to her manner of testifying, and probably attempting to excuse his inability correctly to report the evidence, for he is an amateur, said:

47 OR.——19

"She was excited and crying, if I remember right, and she talked very rapidly." This stenographer not being permitted to read his notes of the testimony, an exception was allowed, whereupon defendant's counsel said : "Miss Preston, I hand you what has been called in this case the 'transcript of your evidence,' given at the coroner's inquest about the 19th day of May, near Freewater, in this county. I will ask you to examine page four of that transcript and say whether or not this is a full and complete transcript and narrative of your testimony given at that time." An objection having been interposed, the court would not permit the witness to examine the writing tendered, on the ground that the stenographer's testimony showed that it was not a complete transcript of the evidence given at the inquest, and an exception was saved.

It is insisted by defendant's counsel that an error was committed in not allowing them to impeach Miss Preston in the manner indicated. Our statute permits the impeachment of a witness by evidence that he has made at other times statements inconsistent with his present testimony, but, if such statements are in writing, they must be shown to the witness before any question is put to him concerning them : B. & C. Comp. § 853. In *State* v. *Crockett*, 39 Or. 76 (65 Pac. 447), it was held that the testimony of a witness given before a coroner was prima facie evidence of what the deponent swore to, and that, when the proper foundation was laid, it was admissible for the purpose of contradicting him. "Prima facie evidence," says Mr. Justice FOSTER, in *Emmons* v. *Westfield Bank*, 97 Mass. 230, "we understand to be evidence which, standing alone and unexplained, would maintain the proposition and warrant the conclusion to support which it is introduced." Prima facie evidence is that degree of proof which, if unchallenged, is sufficient in law to establish a relevant fact : *Crane* v. *Morris*, 31 U. S. (6 Pet.) 598 (8 L. Ed. 514); *State* v. *Lawlor*, 28

Minn. 216 (9 N. W. 698). It will be remembered that the statements made under oath by Minnie Preston at the coroner's inquest, the certainty of which as to its entirety might possibly have been established by the mere production of an authenticated transcript, if a proper foundation had been laid, is rendered doubtful as to its completeness by the declarations of the stenographer who attempted to take her testimony. If it were assumed that the disputable presumption that official duty has been regularly performed makes evidence of an authenticated transcript of testimony taken at the trial of an action, or at the inquiry by a coroner into the cause of the death of a person slain, or of a person who dies under such circumstances as to create a suspicion of the commission of a crime, admissible, it appears in the case at bar that such duty was not properly discharged, and, as the basis upon which the presumption should rest never had any existence, it follows that no proper foundation was laid for the deduction which the law expressly directs to be made from particular facts. The stenographer being unable to say that his notes of the testimony taken before the coroner contained all that Miss Preston uttered under oath at the inquest, she could not be contradicted by the reading of such notes or impeached by the production of a translated transcript thereof, and no error was committed as alleged. The defendant was evidently not prejudiced by such ruling, for the court offered to permit his counsel to lay a foundation for the impeachment of Minnie Preston in the manner prescribed by statute, by calling her attention to the time, place and persons present when she gave her testimony before the coroner, and to ask her on cross-examination whether or not she testified in a given manner, detailing what it was claimed she said under oath at the inquest, and, if she denied giving the testimony imputed to her or could not remember what she said on that occasion, to call witnesses

who were present at the inquest and heard her testify to impeach her.

3. Dr. C. W. Thomas, appearing as a witness for the State, testified that he was a graduate of a medical school and a licensed physician, and that he visited O. N. Preston at the time he was shot and found a lacerated wound over the cheek bone, his nose broken, and the flesh under his eyes discolored, whereupon he was asked whether or not, in his opinion, the injury to the cheek bone could have been caused by a blow from a man's naked fist. An objection to this question on the ground that it was incompetent having been overruled and an exception allowed, the witness answered: "In my opinion it could not have been caused from the blow of a man's naked fist." It is maintained by defendant's counsel that as no testimony had been given tending to show that Dr. Thomas was qualified, either by experience or by study, to express an opinion upon the subject to which the question related, an error was committed in permitting him to answer the interrogatory propounded to him. It will be remembered that the objection interposed was not directed to any inability of the witness to express the opinion, but to the incompetency of the question asked. If defendant's counsel had stated that they objected to any answer that might be given by the witness in response to the inquiry, because no testitony had been offered tending to show that he was qualified to express an opinion upon the subject to which his attention was called, the trial court would have had an opportunity to require the production of further testimony relating to the question of his qualification. The object of every objection interposed at the trial of a cause, and of the exception to the court's ruling thereon, is to incorporate into the bill of exceptions the particular legal proposition submitted to and decided by the trial court, so that upon an appeal from its ruling an appellate tribunal may be able

to review the identical question considered. As the objection which was made related to the alleged incompetency of the question and not to the incompetency of the witness to express an opinion, the legal principle now insisted upon was evidently not considered by the trial court, and, this being so, no error was committed in permitting Dr. Thomas to answer the question propounded after he had testified that he was a graduate of a medical school and a licensed physician, thus showing a prima facie qualification.

Other exceptions are noted, but, as they are not argued in the brief of defendant's counsel, and an examination thereof shows them to be without merit, the judgment is affirmed.                                          AFFIRMED.

The firm of which Mr. Justice HAILEY was a member having been of counsel at the preliminary examination of this case, he took no part in the consideration hereof.

---

Decided 2 January, 1906.