## Frasure v. Commonwealth.

(Decided Sept. 30, 1932.)

128

W. A. DAUGHERTY for appellant.

BAILEY P. WOOTTON, Attorney General, and H. HAMILTON RICE, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER— Reversing.

Alice Frasure married George Frasure October 17, 1917, and on Saturday September 19, 1931, she slew him. Upon her trial, under an indictment, charging her with murder, her plea of self-defense was not accepted by the jury, she was found guilty of manslaughter, and her punishment fixed at 18 years in the penitentiary.

These two have had a tempestuous married life. During the latter part of it the husband devoted much of his time to the sale and consumption of intoxicating liquor. He was a large man, and, when drunk, he was very cruel to her. Witness after witness for the commonwealth tell of hearing him beating her, and of her begging him to desist. They tell of seeing bruises on her body caused thereby, of seeing him beating her and kicking her, that they fought pretty regularly, that they saw her head bloody, saw her nose bleeding, saw her beaten up and bleeding, saw her clothes torn off of her, saw her run out of the house bleeding, etc. The witnesses for the defense give yet more gruesome accounts, but this is bad enough. He was accustomed to call her a whore, a bitch, and other such names. After she left home on Tuesday before the killing, he said he was going to make his yellow headed bitch come back.

The cause of all this was the man's inordinate jealousy, one human trait of which we had something

to say in Sales v. Sales, 222 Ky. 175, 300 S. W. 354, in which we quoted what Solomon said about it, an expression that in some translations reads: "Jealousy is hard as hell." She must have found it so. The anguish of spirit that must have been hers can better be envisaged than described, so it is left to the imagination of the reader.

Early on the day of the homicide he brought some material and left it with her, at the home of her sister, out of which she was engaged in making some waists for their children when about 11 a. m. he came rushing back in a rage with a pistol in his hand, announcing that he had come to make her go home, and firing off his pistol to emphasize his words. Into the house he charged, punching and striking his wife with the pistol and snapping it at her. Mrs. Turner (his wife's sister) fled the scene. Neighbors took alarm, and began telephoning for the officers. His wife began to bundle up her things and to carry them out on the porch, he followed her about, continuing to strike her and punch her with the pistol, to snap it at her, and, when it failed to fire, he sat down on the porch and began an effort to get it to fire, telling his wife that, when he got it fixed, he was going to kill her, whereupon she got her sister's pistol out of her sewing machine drawer and shot him. After he had fallen and his wife was engaged in bathing his face and working with him, he said: "You old whore you are the cause of it all and I hope they prosecute you to the end."

For reversal of this judgment, she argues that she was entitled to a directed acquittal, but, as there was some evidence her husband had given her his pistol before she shot him, the case was properly submitted to the jury.

She contends the court erred in admitting evidence against her. This consists in the admission of evidence that she had been seen with a man in an automobile parked on the roadside, of the evidence of one man that before this homicide he had spent the night with her in a Pikeville hotel, that being the first and the last time he had been with her, and that of another man that he had had improper relations with her, that being his first and last time.

For the admission of this evidence, the commonwealth urges that it tended to show motive, and the

following cases are cited in support of its admission: Stricklin v. Com., 83 Ky. 566; O'Brien v. Com., 89 Ky. 354, 12 S. W. 471; Franklin v. Com., 92 Ky. 612, 18 S. W. 532; O'Brien v. Com., 115 Ky. 608, 74 S. W. 666; Mathley v. Com., 120 Ky. 389, 86 S. W. 988; Childers v. Com., 161 Ky. 440, 441, 171 S. W. 149.

Of these cases we regard the two first cited and the last one as the only one sufficiently applicable to this case to merit discussion. In each of these cases the admission of evidence similar to this was approved but in each instance the admitted evidence was not about a single isolated unrepeated act, but consisted of a series of acts that had culminated in an affection. The Court of Appeals of New York had before it a similar question in People v. Harris, 209 N. Y. 70, 102 N. E. 546, 549, and in that opinion it said:

"'The learned district attorney seeks to sustain the admission of the evidence under consideration by reference to the case of People v. Montgomery, 176 N. Y. 219, 225, 68 N. E. 258, 259, where it was said: 'It is the settled law of this state that, upon a trial for the murder of a husband or wife, the improper relations of the accused survivor with persons of the opposite sex may be given in evidence upon the subject of motive.' Taken literally and without reference to the context, this statement would extend to a single illicit sexual act, however remote it might be in point of time. That such was not the meaning of the court is apparent from the reason of the rule as subsequently stated by Judge Werner and the character of the cases cited in support of it. Evidence of this character is admissible, he says, because it tends 'to repel the presumption of love and affection that arises out of the marital relation and to establish a motive for the desire to get rid of one who, under normal conditions, would be the natural object of kindness and protection.' 176 N. Y. 226, 68 N. E. 260. It may be added that it is only when the evidence has this tendency that it should be received at all; and the cases cited were none of them simply temporary aberrations from the path of virtue, however reprehensible these must be deemed, but they generally involved a relation like that of a man with his mistress or a notorious liaison in open disregard of the husband's duties toward his wife,

implying a preference for another woman, the influence of which might lead a husband to desire to put his wife out of the way."

See, also, State v. Watkins, 9 Conn. 47, 21 Am. Dec. 712, and 16 C. J. p. 590, sec. 1139.

To warrant the admission of this evidence, it must appear that it is relevant to the issue in the case on trial, and in this case these isolated instances of meretricious conduct under circumstances that do not indicate an affection, partiality, or preference for the partner in her sin do not make this evidence relevant.

In Paulson v. State, 118 Wis. 89, 94 N. W. 771, 774, the Supreme Court of Wisconsin said:

"From the time when advancing civilization began to recognize that the purpose and end of a criminal trial is as much to discharge the innocent accused as to punish the guilty, it has been held that evidence against him should be confined to the very offense charged, and that neither general bad character nor commission of other specific disconnected acts, whether criminal or merely meretricious, could be proved against him.

"This was predicated on the fundamental principal of justice that the bad man no more than the good ought to be convicted of a crime not committed by him."

Hence it is improper on the trial of a defendant for a crime to prove that he has committed other crimes having no connection with the one under investigation. Such other acts of criminality or immorality are not legally relevant, and should not be dragged in to prejudice the defendant or to create a probability of guilt.

Mrs. Frasure denies these acts of matrimonial infidelity, but, if she had admitted them, the evidence would not be relevant to the issue in this trial.

For the error in admitting this evidence, the judgment is reversed. Question of this verdict being flagrantly against the evidence is reserved.

The whole court sitting.