Argued at Pendleton October 27, reversed December 2, 1924; rehearing denied February 17, 1925.

## STATE *v.* E. O. WILLSON.

(230 Pac. 810; 233 Pac. 259.)

**Criminal Law—Prosecutrix's Testimony of Operation Before One Alleged Held Improper.**

1. Prosecutrix's testimony that defendant made her pregnant, and performed two separate operations, resulting in death of foetus, prior to offense named in indictment, was improper as relating to distinct crimes not charged.

**Abortion—Evidence of Use of Drug not Admissible, Under Indictment Alleging Use of Metallic Instrument.**

2. Under Section 1437, 1900, Or. L., where indictment alleges use of certain metallic instrument, evidence of administration or use of drug with intent to destroy child is not admissible.

**Criminal Law—Requested Instruction Alluding to "Complicity" of Prosecutrix Improper, but Cautionary Instruction as to Her Interest as Affecting Credibility Should have Been Given.**

3. Requested instruction, that fact that prosecutrix consented to alleged abortion, and "fact of her complicity," might be considered as affecting her credibility and weight of her testimony, was objectionable as alluding to prosecutrix as accomplice; but some cautionary instruction should have been given as to interest of prosecutrix.

**Criminal Law—Female Operated on by Accused not Accomplice.**

4. In cases of abortion, female operated on is not an accomplice of one charged with the offense.

---

1. Evidence of other crimes in abortion and attempt to procure, see note in 62 L. R. A. 229. See, also, 8 R. C. L. 198.

2. Necessary allegations as to means used in indictment for abortion. See notes in 11 **Ann. Cas.** 221; **Ann. Cas.** 1912D, 1325. See, also, 1 **R. C. L.** 79.

3. See 14 **R. C. L.** 734.

4. Woman upon whom abortion is committed as accomplice, see notes in 12 **Ann. Cas.** 1009; **Ann. Cas.** 1916C, 629. See, also, 1 **R. C. L.** 71.

## ON PETITION FOR REHEARING.

**Criminal Law—Exceptions to General Rule That Evidence as to Other Crime is not Admissible, Should not be Increased.**

5. General rule that evidence as to commission of separate crime is not admissible still obtains, and number of exceptions thereto should not be increased.

**Criminal Law—Prosecutrix's Testimony as to Previous Abortion Should have Included Testimony as to Intent to Destroy Child and Want of Necessity to Preserve Mother's Life.**

6. In prosecution for manslaughter, by destruction of child of pregnant woman, under Section 1900, Or. L., prosecutrix's testimony as to other abortions previously performed upon her by the defendant, if admissible, should have included statement as to other elements of previous crimes, such as intent to destroy child, and want of necessity to preserve mother's life.

**Indictment and Information—Allegations and Proof must Correspond.**

7. Allegations and proof must correspond.

**Criminal Law—Prosecutrix's Testimony as to Other Abortions Performed on Her by Defendant Held Inadmissible in Manslaughter Prosecution.**

8. In prosecution for manslaughter committed by use of metallic instrument on womb of pregnant woman, with intent to destroy child with which she was pregnant under Section 1900, Or. L., in which defendant claimed that he did not commit such act, and did not seek to justify it on the ground that it was necessary to save the mother's life, prosecutrix's testimony as to other abortions previously performed on her by defendant was not admissible, since such testimony related to separate transactions, and was not admissible to prove intent, in view of defendant's denial that he committed the act, and conclusive presumption, under Sections 798, 799, subdivision 28, that the act was done with intent to destroy the child.

**Indictment and Information—Defendant has Constitutional Right to be Informed of Nature of Charge Against Him—Defendant to be Held to Answer Only Crime Charged.**

9. Defendant has a constitutional right to be informed of the nature of the charge against him, and to be held to answer only the crime named in the indictment.

---

See (1) 16 **C. J.** 586, 587.   (2) 16 **C. J.** 592.   (3) 31 **C. J.** 835.
(4)  16 **C. J.** 590.   (5)  31 **C. J.** 560, 846.
See 1 **C. J.** 315, 324; 16 **C. J.** 592, 678, 999, 1013 (1926 Anno.).

5. When evidence of other offenses is admissible, see notes in 44 Am. Rep. 299; 105 Am. St. Rep. 976.
7. See 14 **R. C. L.** 206.
9. See 8 **R. C. L.** 67.

From Union: JAMES A. EAKIN, Judge.

In Banc.

REVERSED.

For appellant there was a brief over the names of *Mr. F. S. Ivanhoe, Mr. Jesse Crum* and *Messrs. Green & Hess,* with oral arguments by *Mr. R. J. Green* and *Mr. Ivanhoe.*

For respondent there was a brief over the names of *Mr. Ed. Wright* and *Mr. E. R. Ringo,* with an oral argument by *Mr. Ringo.*

BURNETT, J.—There is an Oregon statute reading thus:

"If any person shall administer to any woman pregnant with a child any medicine, drug, or substance whatever, or shall use or employ any instrument or other means, with intent thereby to destroy such child, unless the same shall be necessary to preserve the life of such mother, such person shall, in case the death of such child or mother be thereby produced, be deemed guilty of manslaughter." Or. L., § 1900.

The grand jury of Union County returned an indictment against the defendant on February 5, 1924, the charging part of which reads as follows:

"The said E. O. Wilson on the 2d day of November, 1923, in the county of Union and State of Oregon, then and there being, did then and there unlawfully and feloniously use a certain metallic instrument, by then and there inserting said instrument in the vagina and uterus of one Hazel Barnes, said Hazel Barnes then and there being pregnant with a child, with the intent then and there thereby to destroy such child, said use of said instrument not being necessary to preserve the life of said Hazel

Barnes, and said defendant did then and there unlawfully and feloniously thereby produce the death of the said child, contrary to the statutes,'' etc.

A trial of the defendant on a plea of not guilty resulted in his conviction and he appealed.

It will be observed that there are two classes of acts by which the crime defined by the statute may be committed. They are the administration of any medicine, drug or substance, and the use or employment of any instrument or other means. It is required by Section 1437, Or. L., that the indictment must contain:

''A statement of the acts constituting the offense in ordinary and concise language, without repetition in such manner as to enable a person of common understanding to know what is intended.''

It appears in evidence, in substance, that the woman named in the indictment went to work for the defendant in his dental office in June, 1922, and continued there until August 17, 1923. She testified that after that date, there was no coitus between her and anyone until November 9, 1923, and none afterwards. Meanwhile, she had been regular in her menses and suspected nothing until November 18th when her catamenia were due but did not appear. The prosecution relies upon November 9th as the date of the intercourse resulting in the pregnancy charged in the indictment. The whole history of the charge in the indictment is included between November 9, 1923, and December 18th of that year, at which last date she claims she had a miscarriage.

1. One class of objections to the procedure of the court is that the prosecutrix was allowed to testify, over the objection and exception of defendant, that she became pregnant by him, and that he performed

two separate and distinct operations upon her result-
ing in the death of the foetus with which she was at
the time pregnant, prior to the one named in the in-
dictment. This is contrary to the rule laid down in
this state in the following decisions: *State* v. *O'Don-
nell,* 36 Or. 222 (61 Pac. 892); *State* v. *Dunn,* 53 Or.
304 (99 Pac. 278, 100 Pac. 258); *State* v. *Start,* 65
Or. 178 (132 Pac. 512, 46 L. R. A. (N. S.) 266); *State*
v. *McAllister,* 67 Or. 480 (136 Pac. 354). Each of
the acts described by the witness, and which were
objected to by the defendant, were complete crimes
in themselves. If this procedure were permissible,
it ought to be laid in the indictment with a *contin-
uando,* but the statute says that the statement must
be without repetition, Or. L., § 1437, and it is
axiomatic that the evidence shall correspond with
the allegations of the accusing document. One con-
sequence of supporting the procedure allowed in
this respect by the trial court would be that no de-
fendant could know how many violations of the law
he would be called upon to defend upon a single
charge, neither would he know when his prosecutions
for some offense would come to an end. Another
result would be that having narrated in testimony
all the instances constituting separate offenses and
failing in the prosecution of one, the state could take
precisely the same evidence and, by changing the
date of the indictment, prosecute a defendant on the
same testimony an indefinite number of times. The
statute contemplates the statement in the indictment
of a single offense, and that the evidence shall be
confined to that charge alone of which the defend-
ant has been informed. The principle is settled in
this state by the precedents cited.

2. Another objection to the procedure was that in the face of the allegations of the indictment confining the act to the use of "a certain metallic instrument," the state was allowed to produce testimony to the effect that certain drugs and medicines introduced and admitted in evidence were given by the defendant to the prosecuting witness on former occasions for the purpose of producing an abortion and the destruction of the foetus of which she was pregnant in those instances. Likewise, she was permitted to testify that he furnished her the money to buy turpentine which he administered to her to bring about the abortion of the foetus named in the indictment. If the state would prove such conduct it should allege it in the indictment, for it is one of the acts constituting the offense. The state had no right merely to allege the use of an instrument and then add to that proof of the administration or use of a drug with intent to destroy the child.

3, 4. The defendant also complains of the refusal of the court to give to the jury the following instruction:

"I instruct you, Gentlemen of the Jury, that the fact that Hazel Barnes consented to the alleged abortion and the fact of her complicity may be considered by you as affecting her credibility as a witness, and the force and weight of her testimony."

The instruction is subject to criticism, in that it alludes to "the fact of her complicity." The weight of authority is to the effect that the female in such instances is not an accomplice, but as stated in *Seifert* v. *State,* 160 Ind. 464 (67 N. E. 100, 98 Am. St. Rep. 340):

"The deceased was not strictly an accomplice, but the moral quality of the act and her connection with

it were such as to entitle the appellant to have said instruction given to the jury.''

According to the statement of the case in that precedent:

''At the proper time appellant tendered an instruction to the effect that, in determining what weight should be given to the dying declarations, the jury might consider the fact that according to her own admission therein the declarant had used the catheter upon her person to produce an abortion. The court refused so to instruct, and appellant reserved an exception.''

The testimony for the state is to the effect that the woman named in the present indictment, accompanied by her sister, went to the defendant, complained that she was pregnant, and sought his assistance to produce an abortion, and so destroy the foetus of which she was then pregnant. There were two of these interviews at each of which, according to her statement, the prosecutrix, her sister and the defendant were present, viz.: on November 20th and 22d. Her motive of shame and dread of the disgrace attendant upon the discovery of her condition would naturally operate strongly on her mind to aid in bringing about the result she desired. She was deeply interested in the question, much more than any other witness, and hence in fairness to the defendant, some such cautionary instruction ought to have been given.

In the instant case no qualified witness had ever seen what could be called a foetus, and no one has said anywhere in the testimony that the child of which the woman was alleged to be pregnant is dead. The prosecutrix relies upon sexual intercourse with the defendant November 9, 1923. She declared that she had frequent desire to urinate and had ''morn-

ing sickness.'' These manifestations are classed as doubtful signs of pregnancy by some authors: 2 Witthaus & Becker, Med. Jur. 554; Draper Legal Med. 173. She testifies that the defendant administered to her turpentine on the twentieth of the same month; and that two days later, on November 22, 1923, he introduced a metallic instrument into her uterus. The testimony of her sister is to the effect that afterwards, on December 18, 1923, there passed from the prosecutrix with a clot of blood a piece of what ''really looked almost like flesh'' about the size of an adult woman's finger and about one and one half to two inches long. This was not exhibited to her attending physician whom she consulted on November 28th and December 18th and who testifies he saw no foetus. No one pretends to say that it was a foetus or that it was alive or dead. The record is silent as to any indication of development of the different members of the human body on the thing so discharged, though according to respectable authorities a foetus of the size described begins to show traces of eyes, nose, mouth, ears, hands and feet, as well as other characteristics of the human body which would readily distinguish it from a vaginal polypus not due to pregnancy: 1 Peterson, Haines & Webster, Leg. Med. & Tox. (2 ed.), 959; 2 Hamilton, System of Legal Medicine, 477. There is before us no history of pigmentation of the breasts or vulva nor softening of the uterus classed among the probable signs of pregnancy: 2 Witthaus & Becker Med. Jur. 557. It may well be doubted whether the testimony was sufficient in that respect, but for the errors already noted, the judgment is reversed and the cause remanded for new trial.

REVERSED AND REMANDED.

BROWN, J., concurs in the result.

Rehearing denied, February 17, 1925.

ON PETITION FOR REHEARING.

(233 Pac. 259.)

For the petition there was a brief over the names of *Mr. Ed. Wright* and *Mr. E. R. Ringo,* with an oral argument by *Mr. Ringo.*

*Contra,* there was a brief over the names of *Mr. F. S. Ivanhoe, Mr. Jesse Crum* and *Messrs. Green & Hess,* with oral arguments by *Mr. R. J. Green* and *Mr. Ivanhoe.*

BURNETT, J.—This is a case charging manslaughter. The appellant was convicted of manslaughter by violating Section 1900, Or. L., in that he was said to have used a metallic instrument on the womb of a pregnant woman with intent to destroy the child of which she was pregnant, the same not being necessary to preserve the life of the mother. On appeal, the conviction was reversed and the cause remanded for further proceedings. Of this the state complains, and petitions for a rehearing, urging principally that the opinion was wrong in holding that the Circuit Court erred in admitting evidence of other similar crimes. Based upon five pages of citations of precedents the prosecution assays to show that practically in all cases, the fact that a defendant has at some time committed a crime of the same nature, may be shown in support of the charge on trial. The petition for rehearing seems to proceed on the supposition that a defendant once guilty is always guilty, not only of other crimes that may

be laid to his charge, without notice to him, but also, per consequence, of the offense for which he is being tried. However natural to zealous counsel this supposition may be, yet it is erroneous.

5. The general rule that the commission of a separate crime cannot be proven in support of the one named in the indictment is still in existence. The exceptions to this rule have not as yet superseded the time honored precept of the law. On the contrary, as said in Underhill's Work on Criminal Evidence, Section 87, cited with approval by Mr. Justice MOORE in *State* v. *O'Donnell,* 36 Or. 222 (61 Pac. 892):

"These exceptions are carefully limited and guarded by the courts, and their number should not be increased."

In *Commonwealth* v. *Shepard,* 1 Allen (Mass.), 575, in speaking of evidence of other criminal acts, Mr. Chief Justice BIGELOW wrote:

"It is a dangerous species of evidence, not only because it requires a defendant to meet and explain other acts than those charged against him, and for which he is on trial, but also because it may lead the jury to violate the great principle that a party is not to be convicted of one crime by proof that he is guilty of another."

Likewise, in *Towne* v. *People,* 89 Ill. App. 258, it was said:

"But the general rule is salutary and departure from it is perilous, and hence courts are reluctant to extend the exception to the rule beyond well-established lines."

Further, in *State* v. *Smith,* 103 Wash. 267 (174 Pac. 9), Mr. Justice MACKINTOSH declares:

"There is no more insidious and dangerous testi-
mony than that which attempts to convict a defend-
ant by producing evidence of crimes other than the
one for which he is on trial, and such testimony
should only be admitted when clearly necessary to
establish the essential elements of the charge which
is being prosecuted. To establish guilty intent, un-
lawful motive, or criminal knowledge, it is permis-
sible to show that the act charged against the defend-
ant was one in a series of similar ones; but beyond
this the state cannot go, and for the purpose of
securing a conviction, show the perpetration of other
similar acts, even though committed in furtherance
of a general scheme, where there is no proof required
to establish intent, motive, or knowledge, other than
proof of the act charged itself. In other words,
where the act charged against the defendant itself
characterizes the offense, the guilty intent is proven
by proving the act. Here the proof of giving of dry
morphine on a prescription calling for morphine in
solution was proof of the intent, and nothing more
was necessary to establish criminality."

The woman named in the indictment, when called
as a witness for the prosecution detailed the circum-
stances of the offense charged in the indictment,
locating the time in November, 1923. In addition to
that, prompted by counsel, in her narration she stated
that two other previous abortions had been per-
formed upon her by the defendant. This was
against the objection of the defendant which was
overruled by the court. She did not go into details
about the method of performance of the other two
abortions, or say anything as to the necessity of pre-
serving her life on those occasions. In fact, she
gave no one of the statutory ingredients of the crime.
In *State* v. *Kelliher,* 49 Or. 77 (88 Pac. 867), the
charge was forgery and other forged instrumtnts
of like tenor, thirty in number, were introduced to

show intent, but were authenticated only by the testimony of an accomplice. Speaking of those other documents, Mr. Justice EAKIN said that

"the prosecution assumed the same burden of proof as to each of the checks introduced to show guilty knowledge as in regard to the check for which he is being tried."

6. That is to say, applying the precedent to the instant case, even if the testimony were admissible, the prosecution had no right to have its witness make the bald statement that there were two other miscarriages without including in her testimony the other statutory elements of the crime, viz., intent to destroy the child and want of necessity to preserve the mother's life.

It is well at this point to dispose of the criticism of the opinion relating to the administration of drugs under the allegation of the indictment. It will be recalled that in the indictment, the only means charged to have been used in the performance of the criminal act mentioned was "a certain metallic instrument." The statute under which the indictment was drawn, reads thus:

"If any person shall administer to any woman pregnant with a child any medicine, drug, or substance whatever, or shall use or employ any instrument or other means, with intent thereby to destroy such child, unless the same shall be necessary to preserve the life of such mother, such person shall, in case the death of such child or mother be thereby produced, be deemed guilty of manslaughter." Or. L., § 1900.

7. It is almost like kindergarten to repeat the ancient rule that the allegations and the proof must correspond. Attention is directed on this point, for example to the civil case of *Knahtla* v. *Oregon Short*

*Line etc. Ry. Co.,* 21 Or. 136 (27 Pac. 91), where it is said in the syllabus that

"Under a complaint which charged the injury complained of to have been caused by the negligence of a defendant railway company in permitting a bridge on its road to become and remain out of repair, and failing to keep proper watch and oversight of the same, the plaintiff will not be allowed to show that the bridge was constructed originally in an improper and negligent manner, and this because the proofs and allegations must correspond with each other."

It would seem that if a great railway corporation could invoke this rule in its defense, the same privilege ought to be extended to an individual defendant who is on trial in a case involving his liberty. *Clark v. Commonwealth,* 111 Ky. 443, 23 Ky. Law Rep. 1029 (63 S. W. 740), was an abortion case in which the indictment charged that defendant caused the woman's death by inserting into her womb a sharp and dangerous instrument. The court said in reversing the conviction:

"It will be observed that the indictment charges that the defendant killed or caused the death of deceased by inserting into her womb a sharp and dangerous instrument, whereby she was wounded and lacerated, and therefrom died. It is not competent for the commonwealth to prove, nor for the fact to be considered by the jury, that the death of deceased was caused by poison administered by defendant in any way or manner. He is not charged with that."

Here the statute prescribes what shall be considered criminal methods in the accomplishment of the crime named in the indictment, and if the state would rely upon any one of those unlawful elements for conviction, it should be alleged in the indictment.

It is said in 22 C. J. 65, that

"In legal acceptation, the term 'evidence' includes all the means by which any alleged matter of fact, the truth of which is submitted to investigation, is established or disproved."

As to apparent exceptions to the general rule for admitting the testimony of other criminal acts of the defendant, Mr. Justice PARKER in *State* v. *Bassett,* 26 N. M. 476 (194 Pac. 867), said:

"These various statements of the so-called exceptions to the general rule are but statements that any evidence which tends to show the guilt of the person on trial is admissible, regardless of the fact that it may show the guilt of the defendant of another crime."

For illustration: A plans to kill B, and as preparation for the execution of his criminal design, he provides himself with a pistol. Finding it necessary to break into B's house to get at him, he also procures a crowbar, and actually does break into the house. It may be that with money honestly earned he goes to a gunstore and buys a pistol and ammunition for cash, and likewise purchases a crowbar at a hardware store. Unquestionably such actions could be shown by the prosecution as indicating deliberation and preparation for the commission of a crime. With equal propriety it could be shown that he stole the pistol from the gunstore, broke into the hardware store and stole the crowbar, and likewise smashed the door of B's house with the crowbar, entered and shot B with the pistol. Strictly speaking, the effort of the state in such a case would not be to prove the crime of burglary with the crowbar, or larceny of it and the pistol. The sole purpose of the state is to prove those acts shown by A to be in preparation for the commission of the offense of murder, and a fair statement of the rule

is that the state is entitled to introduce evidence of any act which directly tends to establish the commission of the crime charged in the indictment irrespective of whether those other acts are criminal or innocent. The reason of the rule is plain. Its application is more difficult. The extremes to be avoided are the French practice of making an analysis and exposition of the whole life of a defendant whether the incidents disclosed relate directly to the criminal charge or not, and the other extreme of dogmatically rejecting anything involving another crime, however closely connected with the offense named in the indictment.

Mr. Justice AGNEW, in *Shaffner* v. *Commonwealth,* 72 Pa. St. 60 (13 Am. Rep. 649), laid down a rule which is widely approved and mentioned by Mr. Justice MOORE with approval in *State* v. *O'Donnell, supra,* as follows:

"To make one criminal act evidence of another, a connection between them must have existed in the mind of the actor, linking them together for some purpose he intended to accomplish; or it must be necessary to identify the person of the actor by a connection which shows that he who committed the one must have done the other. Without this obvious connection it is not only unjust to the prisoner to compel him to acquit himself of two offenses instead of one, but it is detrimental to justice to burden a trial with multiplied issues that tend to confuse and mislead the jury."

The case of *State* v. *O'Donnell,* 36 Or. 222 (61 Pac. 892), is a leading case in this state on the subject in hand. It has been cited often and has never been overruled. Here follows the statement of Mr. Justice MOORE, of the so-called exceptions:

"The rule that evidence of crimes other than that charged in the indictment is inadmissible is subject to a few exceptions, speaking of which Mr. Underhill, in his valuable work on Criminal Evidence (section 87) says: 'These exceptions are carefully limited and guarded by the courts, and their number should not be increased.' The author gives five exceptions to such rule, which may be summarized as follows: (1) If several similar criminal acts are so connected by the prisoner, with respect to time and locality, that they form an inseparable transaction, and a complete account of the offense charged in the indictment cannot be given without detailing the particulars of such other acts, evidence of any or all of the component parts thereof is admissible to prove the whole general plan: *State* v. *Roberts,* 15 Or. 187 (13 Pac. 896); *Phillips* v. *People,* 57 Barb. (N. Y.) 353; *Hickam* v. *People,* 137 Ill. 75 (27 N. E. 88); *Turner* v. *State,* 102 Ind. 425 (1 N. E. 869); *Commonwealth* v. *Robinson,* 146 Mass. 571 (16 N. E. 452); *People* v. *Foley,* 64 Mich. 148 (31 N. W. 94); *State* v. *Williamson,* 106 Mo. 162 (17 S. W. 172); *State* v. *Perry,* 136 Mo. 126 (37 S. W. 804); *Brown* v. *Commonwealth,* 76 Pa. St. 319. Mr. Justice AGNEW in *Shaffner* v. *Commonwealth,* 72 Pa. St. 60 (13 Am. Rep. 649), in commenting upon this exception, says: 'To make one criminal act evidence of another, a connection between them must have existed in the mind of the actor, linking them together for some purpose he intended to accomplish.' (2) When the commission of the act charged in the indictment is practically admitted by the prisoner, who seeks to avoid criminal responsibility therefor by relying upon the lack of intent or want of guilty knowledge, evidence of the commission by him of similar independent offenses before or after that upon which he is being tried, and having no apparent connection therewith, is admissible to prove such intent or knowledge, which has become the material issue for trial: *Yarborough* v. *State,* 41 Ala. 405; *People* v. *Sanders,* 114 Cal. 216 (46 Pac. 153); *Langford* v. *State,* 33 Fla. 233 (14 South. 815); *Stafford* v. *State,* 55 Ga. 591;

113 Or.—30

*Anson* v. *People,* 148 Ill. 494 (35 N. E. 145); *Commonwealth* v. *Bradford,* 126 Mass. 42; *People* v. *Hensler,* 48 Mich. 49 (11 N. W. 804); *Lindsey* v. *State,* 38 Ohio St. 507; *Goersen* v. *Commonwealth,* 99 Pa. St. 388; *State* v. *Habib,* 18 R. I. 558 (30 Atl. 462); *Zoldoske* v. *State,* 82 Wis. 580 (52 N. W. 778). Mr. Justice RAPALLO, in *People* v. *Corbin,* 56 N. Y. 563 (15 Am. Rep. 427), in speaking of this exception, says: 'The cases in which offenses other than those charged in the indictment may be proved, for the purpose of showing guilty knowledge or intent, are very few.' (3) If the facts and circumstances tend to show that the prisoner committed an independent dissimilar crime, to enable him to perpetrate or to conceal an offense, such evidence is admissible against him upon an indictment charging the auxiliary crime, when the intent to perpetrate or conceal such offense furnished the motive for committing the crime for which he is put upon trial: *State* v. *Watkins,* 9 Conn. 47; *Painter* v. *People,* 147 Ill. 444 (35 N. E. 64); *People* v. *Harris,* 136 N. Y. 423 (33 N. E. 65); *Templeton* v. *People,* 27 Mich. 501; *Pierson* v. *People,* 79 N. Y. 424 (35 Am. Rep. 524); *Commonwealth* v. *Ferrigan,* 44 Pa. St. 386; *People* v. *Stout,* 4 Park. C. R. 71; *Grass* v. *State,* 31 Tex. Cr. 312 (20 S. W. 579); *Moore* v. *United States,* 150 U. S. 57 (14 Sup. Ct. Rep. 26, 37 L. Ed. 996, see, also, Rose's U. S. Notes). (4) When a crime has been committed by the use of a novel means or in a particular manner, evidence of the defendant's commission of similar offenses by the use of such means or in such manner is admissible against him, as tending to prove the identity of persons from the similarity of such means, or the peculiarity of the manner adopted by him: *Frasier* v. *State,* 135 Ind. 38 (34 N. E. 817); *Commonwealth* v. *Choate,* 105 Mass. 451; *Brown* v. *State,* 26 Ohio St. 176. (5) When a prisoner is charged with any form of illicit sexual intercourse, evidence of the commission of similar crimes by the same parties is admissible to prove an inclination to commit the act for which the accused is put upon his trial: Bishop, Stat. Cr., § 679; *State*

v. *Scott,* 28 Or. 331 (42 Pac. 1); *McLeod* v. *State,* 35 Ala. 395; *People* v. *Patterson,* 102 Cal. 239 (36 Pac. 436); *Lefforge* v. *State,* 129 Ind. 551 (29 N. E. 34); *State* v. *Williams,* 76 Me. 480; *Commonwealth* v. *Nichols,* 114 Mass. 285 (19 Am. Rep. 346); *People* v. *Skutt,* 96 Mich. 449 (56 N. W. 11); *State* v. *Marvin,* 35 N. H. 22; *State* v. *Pippin,* 88 N. C. 646; *Commonwealth* v. *Bell,* 166 Pa. St. 405 (31 Atl. 123)."

8. The instant case cannot justly be referred to the first exception. There is nothing in the testimony to show that the several alleged abortions constituted an inseparable transaction. Each was a complete case by itself. The two alluded to by the witness were closed incidents. The offense charged in the indictment was complete in itself and might be heard and determined adversely to the defendant although he had never seen the woman before in all her life. Neither does the evidence show any situation portrayed in the second exception. The commission of the act was denied by the defendant, not only in his plea of not guilty, but also in the evidence. So far as the testimony is concerned, he either did the act or he did not do it. The issue is not to be clouded on behalf of the prosecution by setting up a man of straw of which there is no history in the record and proceeding to demolish it at the expense of the defendant's liberty. The third exception cannot, in reason, be applied to sustain the proof of other abortions. It may be applicable to evidence that was admitted without objection that the defendant had illicit sexual relations with the prosecutrix on November 9, 1923. This would furnish a motive for the effort to conceal or prevent discovery of this unlawful coition by destroying the product of conception. It is an illustration of the third exception. In the record there is no history of any novel

or unusual means in effecting the destruction of the child within the embrace of the fourth exception.

Referable to this exception are such cases as *State v. La Rose,* 54 Or. 555 (104 Pac. 299). In that case within 48 hours and in a space of two blocks three different merchants were struck down with a piece of iron pipe wrapped in newspaper by a man who in each instance distracted the attention of his victim by asking to be shown some article of merchandise. The second one was killed by the blow. On being confronted by the third, defendant admitted the assault, said he thought he had killed him and a number of his kind. When the murder was reported in his presence and the method employed was stated, he was heard to say: "They ought to kill all the God damned Jews." Property of the deceased was found in possession of the defendant. There was testimony to the effect that the manner in which the assault in each instance was committed was novel and unusual: Mr. Justice McBRIDE said:

"Three offenses committed in the same locality, each succeeding the other at short intervals, upon persons engaged in selling articles of merchandise of practically the same character, and in substantially the same manner, with the same kind of a weapon, and that a novel and unusual one would suggest to the ordinary reasonable mind that they were the offspring of the same brain and were planned and executed by the same person."

Manifestly this was for the purpose of proving identity, in that it appeared that a method peculiar to the defendant was employed in committing the crime. Here there is no question of identity. The offense was committed by the defendant Willson, or it was not committed by him. It is not necessary,

and on the other hand it is unjust to confuse the issue by such devious means.

The prisoner is not charged in this indictment with any form of illicit sexual intercourse mentioned in the fifth exception. Incidentally it appears in evidence, according to the statement of the prosecutrix that he had such intercourse with her on November 9, 1923, but that is not the offense for which he was brought to trial.

It would require too much space to analyze in detail the seventy-five citations of precedents from other states and the federal courts contained in the brief in support of the petition for rehearing. Some of them are applicable, most of them are not. For the present it is enough to consider the 18 citations from the Oregon Reports.

*State* v. *Baker,* 23 Or. 441 (32 Pac. 161), was a case where the two defendants were engaged in a general pillaging raid in the country extending from Lebanon in Linn County to Salem in Marion County. The particular offense named in the indictment was the larceny of a mare, the property of one Needham. She was stolen on the night of the 12th of October from Needham's pasture in Linn County and on the same night another animal was stolen from Anderson, and a saddle and bridle from Albers, both neighbors of Needham. Within three days afterwards they were seen at the gate on the toll road leading from Lebanon to Eastern Oregon, traveling east with those two animals in their possession, but having no money with which to pay toll they were compelled to and did return toward the west. Two days later the two horses were turned into a pasture near the toll road and remained there until the night of the 30th when they were taken out without the knowledge of the owner of the pasture and without payment of

the pasturage. As the parties progressed from there toward Salem, there was stolen from Royce at Lebanon, a spring wagon, a set of harness, and a buggy robe. Later in the night near Albany, there was stolen from Baltimore a pair of single lines, a buggy cushion and two blankets. On the following day their pursuers arrested them near Salem and all this property was found in their possession. The court held that this was one entire transaction of which the larceny of Needham's mare was merely a part, and it was impossible to detail the transaction regarding that mare without the other incidents creeping into the narration.

The syllabus of *State* v. *O'Donnell, supra,* reads thus:

"In a prosecution for larceny it is prejudicial error to admit evidence that defendant had other stolen property in his possession, it not appearing that such other larceny was a part of the transaction for which defendant was on trial, or was connected with it in respect to either time or locality."

It is not pretended in the instant case that the woman was pregnant with more than one child at a time, or that being in a multiparous condition the defendant destroyed the several foetuses one at a time as an entire transaction.

*State* v. *Savage,* 36 Or. 191 (60 Pac. 610, 61 Pac. 1128), was a case where the defendant was charged with the crime of larceny in the office of the Pacific Express Company at The Dalles. A witness, Jackson, testified over defendant Savage's objection that some four or five months prior to the larceny in the office at The Dalles, Savage and his co-defendant, Klein had tried to persuade him to assist in robbing a passenger train at a place west of The Dalles known as "Hog Canyon" but that he declined. It

was also shown that the Pacific Express Company was the only express company transporting money on trains passing "Hog Canyon" and that it employed passenger trains for that purpose. Taken in connection with other testimony, Jackson's statement was evidence of planning and preparation for the commission of crime culminating in the larceny in the office at The Dalles. The evident purpose was to appropriate the money of the express company and it could make no difference whether it was accomplished at The Dalles or at "Hog Canyon." The actual commission of a separate and distinct crime was not involved. It is not apparent why this case was cited in support of the petition for rehearing.

In *State* v. *McDaniel,* 39 Or. 161 (65 Pac. 520), the defendant was charged with murder. The court said, among other things:

"Where the evidence offered logically forms a link in a chain of circumstances tending to connect the defendant with the commission of the crime charged in the indictment or is so connected therewith as to form one entire transaction it is admissible, although it may tend to prove other offenses." "When the body of an unmarried young woman was found in a secluded spot and it was evident that an attempt had been made to produce an abortion upon her and defendant who was indicted for her murder, was the last person seen with her, and it appeared that a few days previously he had some means of producing an abortion, a statement of defendant to the officers that he had been physically intimate with the deceased was so closely connected with the crime charged as to render it admissible though it be considered as amounting to a confession of a different offense."

Clearly, the conduct of the defendant in his relations to the deceased girl was admissible to show a

motive on his part for killing her in order to avoid disclosure of his previous offense.

Murder was the charge against the defendant in *State* v. *Martin,* 47 Or. 282 (83 Pac. 849, 8 Ann. Cas. 769). As showing motive on the part of the defendant the state was allowed to prove that the deceased had accused defendant of seducing the former's daughter and had threatened to put defendant "behind the bars" for it, at the same time exposing the butt of a pistol in his pocket. The accusation of seduction, though imputing a crime, went to show motive of the defendant to silence the accuser.

"Under this exception to the general rule, where facts and circumstances amount to proof of another crime than that charged, and it appears probably that the crime charged grew out of the other crime, or was in any way caused by it, the facts and circumstances may be proved to show the motive of the accused."

It may be probable that the crime charged in this indictment grew out of the offense named by the prosecutrix on November 9, 1923, but there is nothing to show that the crime charged was the result of any alleged previous abortions.

The case of *State* v. *Kelliher,* 49 Or. 77 (88 Pac. 867), was one in which the defendant was charged with the forgery of an assignment of a certificate of sale of school lands. Other forged instruments of like tenor, 30 in number, were introduced to show intent, but were authenticated only by testimony of an accomplice. Hence it was held that the conviction was erroneous. The court said:

"The purpose of this evidence was to show guilty knowledge on the part of the appellant of the forgery of the Rice assignment, as tending to corroborate Turner as to appellant's connection with it, and

the rule is that when the question of scienter, intent or identity is an essential ingredient of the crime on trial and such knowledge is denied by the defendant or mistake or accident claimed, proof of other like acts, even though they establish an independent crime may be shown as tending to show guilty knowledge or intent."

This quotation makes that case referable to the second exception, but its applicability here is quite another question because in the instant case there is not a question of scienter, intent or identity including a denial of knowledge by the defendant or mistake or accident claimed. It is upon this exception that evidence of other offenses is admitted in such cases. The issue here is whether the defendant performed the act or not. There is no claim of mistake or accident; there is no confession of the act or avoidance of it by other matter.

In *State* v. *Baker,* 50 Or. 381 (92 Pac. 1076, 13 L. R. A. (N. S.) 1040), the defendants were indicted for permitting a female under 21 years of age to remain in and about a saloon owned by them in which intoxicating liquor was kept for sale. The woman named in the indictment with another woman and a man went into a room adjoining the barroom of the saloon and remained there ten minutes, during which time defendants served them with beer. This court held that the sale of the beer was admissible as a part of the transaction. Besides, it was competent in support of the averment that the place was one where intoxicating liquor was kept for sale. That case has no application whatever in the present contention.

As showing motive of the defendant to kill his wife, in *State* v. *Hembree,* 54 Or. 463 (103 Pac. 1008), the state attempted to prove that the defend-

ant had sustained incestuous relations with their daughter. The court held that the evidence offered did not prove such a relation and that even if it could be inferred from the circumstances the inference of motive could not rest on the first inference. The court also said:

"Proof of the commission of other offenses having no connection with the crime for which a defendant is on trial is irrelevant and inadmissible; but in order to establish the intent with which an accused performed a criminal act, or to ascertain a motive for such conduct, the prosecution may show other crimes committed by him leading to or connected with the offense for which he is being tried."

The principle is stated indeed in the opinion, but it is held that it was not applicable in that instance. It would seem that if incestuous relations between the father and daughter were not admissible in that case where the defendant was charged with the murder of both daughter and wife, the previous abortions in the instant case would have no place in the consideration of the crime here charged.

In *State* v. *Germain,* 54 Or. 395 (103 Pac. 521), the defendant was charged with obtaining money by false pretenses. It appears that he was conducting an employment bureau and collected money from an applicant for labor and sent him on a fool's errand to a distant point in search of a fictitious employer. No facts are stated relating to other offenses, except what is contained in the following extract:

"Testimony concerning similar offenses was properly received as tending to show motive and fraudulent intent."

The matter of fraud is one peculiarly open to the defense of mere mistake and under the second ex-

ception such evidence is usually admissible, but no such element is present in the instant case.

*State* v. *La Rose,* 54 Or. 555 (104 Pac. 299), has already been reviewed and contains no circumstance in common with the present contention.

*State* v. *Finch,* 54 Or. 483 (103 Pac. 505), was a murder case where for the purpose of showing the motive of revenge the state was allowed to introduce the record of proceedings instituted by the deceased as prosecutor for the State Bar Association whereby defendant was disbarred from practicing as an attorney because he had been drunk while trying a case in court, had issued checks on a bank where he had no funds and had unlawfully affixed a notarial seal to certain pension papers. The court said it was plain from the evidence that the difficulty between the two arose out of those proceedings. The pregnancy of the prosecutrix in the instant case certainly did not arise out of the previous abortions. Neither could the instant abortion be intended to conceal the others.

What support for its contention the state can derive from *State* v. *Rader,* 62 Or. 37 (124 Pac. 195), is problematical to the writer. There the defendant was charged with burning some haystacks belonging to the prosecuting witness Barr. When the witness was testifying, he was asked:

"What occurred at your place about July, 1908? A. Young Rader passed by where I was at work in my field. They came through my place and went down by the house and cut one of my milch cow's tail off."

The date of the arson was fixed at October 29th. Mr. Justice McBRIDE, speaking for the court said:

"The state, for the purpose of showing motive, had a right to show that Barr had charged the defendant with the crime of mutilating stock and had had him arrested: *State* v. *Finch,* 54 Or. 482 (103 Pac. 505). But it could not go beyond this and give evidence tending to show that another substantive crime had been committed: *State* v. *O'Donnell,* 36 Or. 222 (61 Pac. 892). The defendant who was indicted for burning a haystack on the 29th day of October, could not be expected to come prepared to refute a charge that he had mutilated a cow on the 12th day of July previous. We think that the admission of this evidence constitutes reversible error."

An instance of obtaining a signature to a deed by means of false pretenses is found in *State* v. *Whiteaker,* 64 Or. 297 (129 Pac. 534). The defendant by means of false representations respecting the character of some California land as to its oil producing qualities, made during negotiations covering about three weeks, induced the prosecuting witness to sign a deed conveying her land in exchange for stock in a fake corporation. As the transaction was continuous—all for the purpose of obtaining the deed—it was held that representations prior to the actual execution of the deed were properly received in evidence, all of which refers the case to the first exception noted in *State* v. *O'Donnell.* The case contains no elements in common with the one in hand.

*State* v. *Wilkins,* 72 Or. 77 (142 Pac. 589), was a murder case. To show motive on the part of the defendant the state proved that he had committed an aggravated sexual assault on a daughter of the decedent, and had vowed he would accomplish his purpose on her person even if he had to kill her. The court said:

"If the defendant had grievously wronged the daughter of the decedent, he might reasonably sus-

pect that his victim would take measures to bring him to justice or possibly to avenge the insult, whence would arise the motive for putting the decedent out of the way to protect himself or to remove her natural protector as an obstacle to his designs against the daughter.''

This precedent is properly referable to the third exception but is not enlightening upon the present contention.

*State* v. *McClard,* 81 Or. 510 (160 Pac. 130), was a case of burning property with intent to defraud the insurer. The defendant had insured his personal effects which he kept in a room in a boarding-house. About a week later, a fire occurred in that room, destroying the insured chattels and he collected the insurance. To show the intent to defraud, the state was allowed to prove that nearly five months afterwards he again insured similar property under like circumstances and in about a week later a fire occurred in his room as before, and he collected the second insurance. This case may be referable to the fourth exception along with the La Rose case as showing the commission of a crime in a particular manner. Moreover, it is admissible under the peculiar elements of fraud.

*State* v. *Farnam,* 82 Or. 211 (161 Pac. 417, Ann. Cas. 1918A, 318), was a murder case. The body of decedent, partly consumed by the fire, was found in the ruins of a burned barn. Between the legs of the corpse was found a foetus which physicians said was expelled by hand or by the use of some instrument. The evidence of all this was interwoven so as to form one transaction out of which the state carved the charge of murder, although there were the possible ingredients of murder, arson and manslaughter. There was evidence in the case tending to show that

the defendant had had illicit sexual relations with the decedent by means of which she was possibly pregnant. All of this furnished a motive for the defendant's killing the decedent and destroying her remains by burning them in the barn. It is referable to the third exception.

*State* v. *Morris,* 90 Or. 60 (175 Pac. 668), was concerning the larceny of a horse. The defendant claimed to own the horse and admitted possession of him. The question was whether it was a guilty possession. There was testimony that the brand of defendant on the horse had the appearance of being formed by working over the brand of another party who claimed the horse. Other testimony was to the effect that when the horse in question was found in defendant's possession

"other animals owned by other parties were also found in his possession or claimed by him which exhibited evidence of having upon them worked-over brands similar to that upon the animal in question."

Mr. Chief Justice McBRIDE wrote:

"As a general rule evidence of other crimes is not admissible, but where the evidence tends to show the commission of a system of crimes by unusual methods, it is admitted. In the case at bar a single instance of rebranding might be attributed to a mistake as to the ownership, or to accident or carelessness in branding in the first instance and in order to show system, motive and intent, the evidence was competent."

That is another case where the act is admitted, but the intent with which it is done is contested, an instance of confession and avoidance, but such is not the contention in the present instance. The issue is plainly drawn by the plea and the evidence that the

defendant did the act or not, irrespective of mistake or accident.

Another motive case referable also to the first exception is *State* v. *Walters,* 105 Or. 662 (209 Pac. 349). There two deserters from the army came to Portland and in the space of about three hours committed three robberies. The defendant told his confederate during or soon after the robberies that "after doing this I would not stand for arrest, but I would take a run for it first" and that "he did not care, they were not going to take him." He killed the policeman who attempted to arrest him very soon after the robberies. Mr. Justice HARRIS said:

"Obviously he fired the shot in order to prevent arrest by officers of the law. The crime for which the defendant was being tried arose out of the robberies. The killing would not have occurred if the robberies had not been committed."

The evidence was admitted to show motive in that he killed the officer to prevent arrest for the robberies.

Not one of the cases cited by the state in its brief in support of the petition for rehearing has any legitimate application to the issue at hand, except the case of the *State* v. *Rader, supra,* which is directly opposed to the contention of the state.

The celebrated case of *People* v. *Molineux,* 168 N. Y. 264 (61 N. E. 286, 62 L. R. A. 193), is cited by the state in support of its petition. That was a case of murder by the administration of poison. The people contended that defendant adulterated bromoselzer with cyanide of mercury—a poison—and sent it by mail to Cornish with whom he had quarreled about the management of an athletic club, and that the latter innocently allowed his landlady, Mrs.

Adams, to take some for a headache, thinking it was bromo-selzer), whereby she was killed. Conviction was reversed because the state was allowed to prove that defendant was jealous of attentions paid to his sweetheart by Barnet, that the latter had received by mail a box of Kutnow powder, adulterated with cyanide of mercury, upon partaking of which he died. The reasons given for reversal were that it was proving a separate and distinct crime proceeding upon different motives at different times and not related to each other, and because the only evidence that Barnet received the Kutnow powder by mail was the hearsay testimony of Barnet's physician who said Barnet told him so. Of course, the reason based upon hearsay evidence is not applicable here, but otherwise it is a clear instance of the wrong of compelling a defendant to answer for two separate and distinct crimes under a single indictment, and furnished the principal ground for reversing the conviction.

*People* v. *Sharp,* 107 N. Y. 427 (14 N. E. 319, 1 Am. St. Rep. 851), was a case where the defendant was indicted for bribing a member of the city council by paying him $20,000 in 1884 to influence his vote on that question in favor of the franchise. The trial court admitted the testimony of a witness to the effect that in 1883, he himself was an engrossing clerk of the assembly and that at that time the defendant offered him $5,000 to alter a

"bill then pending before that body in reference to street railways, so that its terms might authorize the struction of a railroad on Broadway."

The conviction was reversed. Mr. Justice DAN-FORTH said:

"Such evidence is uniformly condemned as tending to draw away the minds of the jurors from the real point on which their verdict is sought, and to excite prejudice and to mislead them."

Mr. Justice PECKHAM said:

"To adopt as broad a ground for the purpose of letting in evidence of the commission of another crime is, I think, a very dangerous tendency. It tends necessarily and directly to load the prisoner down with separate and distinct charges of past crime which it cannot be supposed he is or will be in proper condition to meet or explain and which necessarily tend to very gravely prejudice him in the minds of the jury upon the question of his guilt or innocence."

Mr. Justice PECKHAM reviews the cases very extensively in reaching the conclusion that the reception of such testimony was erroneous.

According to the syllabus in *Boyd* v. *United States,* 142 U. S. 450 (35 L. Ed. 1077, 12 Sup. Ct. Rep. 292, see, also, Rose's U. S. Notes), it was held that

"On the trial of a person indicted for murder, it appeared in evidence that the killing followed an attempt to rob. The court admitted under objections, evidence tending to show that the prisoner had committed other robberies in that neighborhood, on different days, shortly before the time when the killing took place, and exceptions were taken. Held that the evidence was inadmissible for any purpose."

Obtaining money by false pretenses in representing at a sale of a horse that he was sound and kind, was under consideration in *Commonwealth* v. *Jackson,* 132 Mass. 16. There was testimony that within a few days previous to the sale in question defendant had sold other horses to other parties on like false representations, and the court held that it was wrongly admitted. Mr. Justice DEVENS said:

113 Or.—31

"The evidence here admitted as to the three other fraudulent sales does not appear to come within any of the exceptions to the general rule that limits the trial to the immediate act for which the defendant is indicted. No instrument was used like the base coin or false plate which might have been uttered innocently, and of which a guilty knowledge was important to be shown * * . The transactions formed no part of a single scheme or plan, any more than the various robberies of a thief."

In *People* v. *Fitzgerald,* 156 N. Y. 253 (50 N. E. 846), in treating of circumstantial evidence, Mr. Justice O'BRIEN said:

"The circumstances themselves must be established by direct proof, and not left to rest upon inference. The inference which is to be based upon the facts and circumstances so proved must be a clear and strong logical inference, an open and visible connection between the facts found and the proposition to be proved. * * And however natural it may be for the common mind to reason that a person who has committed, or is suspected of having committed, an offense, is likely to commit another, and therefore be guilty of the one charged, yet the law refuses to recognize it as a fact or circumstance tending to establish the specific charge or to allow the accused to be prejudiced in that way with the jury."

In that case the people were permitted to prove that more than two years prior to the burning of the schoolhouse involved other property of the church corporation mentioned, covered by insurance had been burned; also, some of the defendant's private property; and that as a consequence, the agents of the insurance company insisted upon canceling policies upon other property which the defendant had procured to be written. There was much evidence of that character offered and received, but the real ori-

gin of the former fires was left to conjecture, and this was held to be error.

*Rosenweig* v. *People,* 63 Barb. (N. Y.) 634, was a case of manslaughter by producing abortion, which was cited by the state in its brief in support of the petition. On cross-examination defendant was asked if he had not performed an abortion about two years before on a young woman then in the courtroom, named by the prosecutor, and whom he had stand up so the defendant could see her. He replied that he had never seen her and had never performed an abortion upon her. Over objection the woman was allowed to testify that defendant had performed an abortion upon her about two years prior to the trial and this was held to be reversible error.

*Baker* v. *People,* 105 Ill. 452, was an abortion case. In the opinion of Mr. Justice MULKEY, it is said:

"It is well settled that upon trial of a party for one offense growing out of a specific transaction, you cannot prove a similar substantive offense founded upon another and separate transaction, but in such case the prosecution will be put to its election. An exception to this rule is found in prosecutions for passing counterfeit money, and the like, where previous attempts to pass counterfeit may be proved for the purpose of showing guilty knowledge; but the principle involved in this class of cases has no application to the case in hand."

In a local option case, *Walker* v. *State* (Tex. Cr.), 72 S. W. 401, the opinion states the principle thus:

"Wherever facts testified in regard to the case on trial are plain and certain, extraneous matter cannot be introduced under the rule in regard to system, developing the *res gestae* or proving intent."

In *Towne* v. *People,* 89 Ill. App. 258, after speaking about the danger of admitting such testimony, the court goes on to say:

"While the decision of different jurisdictions vary somewhat as to the application of this exception to the rule, yet they are all in substantial accord upon the proposition that .unless there be some apparent logical connection between the two offenses, either by reason of both being of the *res gestae* or both being part of one system, or the one tending to show a *scienter* in the other, the general rule governs, and the exception to it does not apply."

*State* v. *Harris,* 283 Mo. 99 (222 S. W. 420), was a case of statutory rape, said to have been perpetrated upon the defendant's own daughter. Speaking of the prosecution by indictment or information required by the Missouri Constitution, the court said:

"It is evident that the framers of our constitution contemplated that every man was presumed to be innocent of crime until proven guilty. * * They did not contemplate that the state might charge the defendant with the specific crime of statutory rape in August, 1917, and proceeding by ambush, attempt to prove another independent crime of the same nature on the first day of January, 1918, having no connection with the one under consideration, which had never been pleaded in the information, and without any opportunity having been afforded the accused to meet the charge."

Murder was the subject under consideration in *Martin* v. *State,* 86 Fla. 616 (98 South. 827). Defendant offered himself as a witness. On cross-examination he admitted that he had been convicted of a crime. In addition to this he was compelled over objection to answer that it was manslaughter of which he had been convicted. Mr. Justice ELLIS said:

"In a prosecution for murder therefore, when the state attorney undertakes to show, that the defendant, who offered himself as a witness, was once before convicted of a similar crime to that for which he is

being tried, he seeks to obtain an advantage in aid of conviction which the statute does not contemplate. When identity is uncertain or motive doubtful, or purpose questionable, evidence of conviction of similar offenses is not admissible, unless such relation exists between them that proof of one tends to prove the other. It is not competent to prove that one committed other crimes for the purpose of showing that he would likely commit the crime with which he is charged. 10 R. C. L. 939.''

It is said in *Commonwealth* v. *Elias,* 76 Pa. Super. Ct. 576:

''To make one criminal act evidence of another some connection must exist between them; that connection must be traced in the general design, purpose or plans of the defendant, or may be shown by such circumstances of identification as necessarily tend to establish that the person who committed one must have been guilty of the other. The collateral or extraneous offense must form a link in the chain of circumstances or proofs relied upon for a conviction; as an isolated or disconnected fact it is of no consequence; a defendant cannot be convicted of the offense charged simply because he is guilty of another offense.''

*State* v. *Lyle,* 125 S. C. 406 (118 S. E. 803), involved the uttering of a forged check. Evidence of like transactions in Georgia from ten days to seven weeks prior to the commission of the crime charged in the indictment was held erroneously received. MARION, J., said:

''Admission of the evidence as to the alleged Georgia offenses forced him to undertake in this case the trial of three other cases, not for the purpose of disproving the admitted criminal intent of the act charged, but to rebut the illegitimate inference of his guilt that would be raised by evidence that he had committed or was accused of having committed other similar crimes.''

*State* v. *Shuford,* 69 N. C. 486, was a case of infanticide. The syllabus reads thus:

"On the trial of a mother for the murder of her infant child it is error in the court below to permit a witness to relate a statement made by the mother of the prisoner and in her presence, that the prisoner 'had a child this way before and put it away,' to which the prisoner made no reply, and the reception of such evidence entitles the prisoner to a new trial. Evidence of a distinct substantive offense cannot be admitted in support of another offense."

The syllabus to *Meno* v. *State,* 117 Md. 435 (83 Atl. 759), reads thus:

"In a prosecution for killing deceased by means of an abortion, evidence that accused told witness that he had performed similar operations on other girls was inadmissible."

The defendant in *Dennison* v. *State,* 17 Ala. App. 677 (88 South. 214), was charged with the larceny of an automobile. The state introduced evidence of defendant's stealing another car besides the one named in the indictment. BRICKEN, P. J., said:

"It has been expressly held, however, that usually some connection between the crimes must be shown to have existed in fact and in the mind of the accused, uniting them for the accomplishment of a purpose common to both, before such evidence can be received, and the connection must appear from the evidence. Whether any connection exists is a judicial question, and if the court does not clearly perceive it, the accused should be given the benefit of the doubt and the evidence should be rejected. The minds of the jurors must not be poisoned and prejudiced against a prisoner by receiving evidence of this description unless the case comes clearly under the exceptions."

The court further held that the sole question was whether or not he stole the car; that *scienter* was not

an element in the evidence calling for elucidation by showing another larceny.

We turn now to the question of intent. The only intent specified in the statute is "intent thereby to destroy such child."

"A presumption, unless declared by law to be conclusive, may be overcome by other evidence, direct or indirect; but unless so overcome, the jury are bound to find according to the presumption." Or. L., § 797.

"The following presumptions, and no others, are deemed conclusive:—

"1. An intent to murder, from the deliberate use of a deadly weapon, causing death within a year;

"2. A malicious and guilty intent, from the deliberate commission of an unlawful act, for the purpose of injuring another; * * " Or. L., § 798.

If A deliberately thrusts a dagger through the heart of B and so kills him, the state does not concern itself about otherwise proving criminal intent, for such proof is supplied beyond question by the two conclusive presumptions mentioned. Being thus conclusive, nothing is admissible to dispute or support them. The defendant may not controvert them, but he may escape them by proving self-defense to the extent of raising a reasonable doubt, or by showing that he was so insane as to be incapable of forming any intent.

In this case, the process of gestation had not advanced beyond six weeks if we may believe the testimony for the prosecution. It is common knowledge that at that stage no foetus is viable or at all capable of independent existence, so that any attack upon it must be with a view to its destruction. Thrusting a sharp instrument into it, as the prosecutrix details, is just the same as the killing of B in the example above, and the conclusive presumption attaches, pre-

cluding the necessity or propriety of other proof of intent. As a matter of common sense such treatment never has any other object than to destroy the child, at that age of the foetus, whether for a benign or evil purpose. The act itself proclaims the intent with which it was done. As before, the effect of the presumption may be avoided by showing that the use of the instrument was in defense of the mother's life. That, however, depends on her physical condition at that time. As against the defendant, it is not in the least affected by that of any other woman or even of herself at any other time. Under such circumstances, testimony about other abortions even on the same woman can have no effect except to attack the character of the defendant and prejudice the minds of the jurors against him. It is to indulge the reasoning, fallacious under all the precedents, that if the defendant is guilty of another crime he must have committed the one named in the present indictment. The state has offered some testimony neutralizing the exception, in that the mother was in good health, so that the jury could presume as a matter of evidence that the birth would happen according to the ordinary course of nature and the habits of life: Or. L., § 799, subd. 28. In this state of the evidence it was incumbent upon the defendant if he chose to justify the act, to show that what he did was necessary to preserve the life of the mother. Such was not his theory of the case. He did not attempt to confess and avoid the act charged. The theory of the defense was that of the general issue in which he flatly denied the charge. One of the conditions of the second exception stated in the O'Donnell case is "when the commission of the act charged in the indictment is practically admitted by the prisoner."

This element is not present in the instant case and hence there is no ground for the employment of that exception, at least until the condition appears in evidence.

*State v. Gilligan,* 92 Conn. 526 (103 Atl. 649), was a case of murder by the administration of poison. The defendant was the keeper of an old people's home and was accused of poisoning Andrews, an inmate from whom she had but lately borrowed $500. The prosecution was allowed to show the death by poisoning in the same institution of three other persons in the same year of 1914, two before and one after the death of Andrews, whom she was accused of killing on May 30, 1914. The case was one of circumstantial evidence, which showed: 1. Secrecy about the $500 loan; 2. Plans to receive two other inmates to take the room occupied by Andrews and lying statements made to the two applicants; 3. Purchase of arsenic four days before the death of Andrews on the false statement that it was for rats; 4. The fact that Andrews received at least two doses of that poison; 5. Delay in calling the physician the first time and again the second time; 6. False statements to the doctor and others about the nature of Andrews' illness; 7. Unreasonable failure to notify his relatives; and 8. Unseemly haste in getting rid of the body. As to this situation which was shown by the evidence, Mr. Justice BEACH said:

"In this case the question is whether evidence generally objectionable shall be admitted for the limited purpose of eliminating accident or mistake, and we think it would be an abuse of discretion to permit proof of similar but unconnected poisonings in a case where the state's evidence had already gone so far towards eliminating accident or mistake as to leave no reasonable doubt, in the absence of rebutting evi-

dence, that the poison if administered by the accused must have been knowingly administered. Otherwise evidence inadmissible on the general issue would be admitted for the special purpose of characterizing an equivocal act, when the act in question was not equivocal and so the only practical effect which the evidence could have would be to prejudice the accused and violate the policy of the criminal law. * * If evidence of other similar but otherwise irrelevant poisonings is offered for the limited purpose of reducing the probability of accident or mistake, it is the duty of the court to determine whether the administration of the poison, if done by the accused under the circumstances claimed by the state is, in the absence of rebutting evidence, reasonably consistent with innocence, accident or mistake. If not, the evidence must be excluded without prejudice to its possible admission in rebuttal."

In the instant case no theory of the evidence, either for the prosecution or for the defendant, discloses that the acts imputed to the defendant were consistent with innocence, accident or mistake. Hence, the effort to prove intent by showing the commission of other offenses is entirely out of place.

It is said in *Holzmacher* v. *United States,* 266 Fed. 979, where the defendant was charged with a breach of the Espionage Act:

"In cases where there are eye or ear witnesses to the happening of an isolated transaction, and the sole question is whether it happened or did not happen, it is not proper or competent to permit the introduction of evidence of other remote and disconnected matters not charged in some good count in the indictment, to prove intent, where the element of intent is not involved in the crime charged."

After discoursing on the dangerous character of testimony respecting other offenses, Mr. Justice MACKINTOSH, in *State* v. *Smith,* 103 Wash. 267 (174 Pac. 9), already noted, said:

"Where the act charged against the defendant itself characterizes the offense, the guilty intent is proven by proving the act. Here the proof of giving any morphine on a prescription calling for morphine in solution was proof of the intent and nothing more was necessary to establish criminality."

*People* v. *Minney*, 155 Mich. 534 (119 N. W. 918), was a case of malicious mischief by slitting the tongue of a horse belonging to one Murphy. Other offenses of the kind had been committed previously in the same neighborhood, among others upon two horses belonging to one Kirk. A detective induced the defendant to go with him to Chicago ostensibly to buy horses. While there the detective negotiated with defendant to mutilate some horses belonging to Johnson during which negotiations, as the detective said, the defendant stated that "he had done them kind of jobs before," and had done the Kirk job. Concerning the testimony, Mr. Justice GRANT said:

"It was proving another separate and distinct offense, which had no tendency to prove motive or intent any more than the commission of one burglary or one theft had a tendency to prove the commission of another burglary or theft. * * To bring a case within the exception it must appear that there is some logical connection between the crime charged and the other similar crimes which the people seek to establish against the respondent upon trial. * * In the present case the commission of another like offense was wholly unnecessary to show intent. The act itself is one of those which when proven, conclusively establishes the malicious intent if committed by a sane person. Any number of like offenses would not tend to show malicious intent any more than could one. If the evidence established the fact that the respondent committed the deed, he would escape conviction only by a further finding by the jury that he was irresponsible by reason of insanity."

In *State* v. *Bersch,* 276 Mo. 397 (207 S. W. 809), the court said:

"If the character of a crime is such as to show upon its face the intent with which it was done, that is, if the act speaks for itself, then such evidence is inadmissible."

Robbery was the subject of *State* v. *Spray,* 174 Mo. 589 (74 South. 846). In that case for the purpose of identifying the defendant the state was permitted to show that he was seen at another point the same evening in the vicinity of the scene of the robbery charged in the indictment, but the appellate court held that it was error to go on and show that he committed another robbery at that other point. The court speaking by Fox, J., said:

"The testimony of a separate offense must have some tendency to prove the charge in the indictment. It is admissible only on the ground that it has some logical connection with the offense proposed to be proven. It is clearly not admissible on the theory that if a person will commit one offense, he will commit another. From the instruction of the court given in this case, it appears this testimony was admitted for the purpose of showing intent. This was error; the facts constituting the offense, and the very act itself, as shown by the prosecuting witness, was sufficient evidence of intent. The act of defendant, if he committed it, needed no explanation to indicate intent. The act itself carried the intent with it."

Also, in *Walker* v. *State* (Tex. Cr.), 72 S. W. 401:

"Wherever facts testified in regard to the case on trial are plain and certain, extraneous matter cannot be introduced under the rule in regard to system, developing the *res gestae* or proving intent."

In *People* v. *Lonsdale,* 122 Mich. 388 (81 N. W. 277):

"Respondent was convicted of the crime of man slaughter by abortion. The theory of the prosecution was that on February 21, 1899, the respondent used an instrument for the purpose of procuring the abortion; that the womb was perforated; that deceased aborted on the morning of the 21st; and that she died at 5 o'clock on the 23d. That an abortion had been committed was conclusively established. * *

"The prosecution introduced the testimony of a witness to show that she had applied to the respondent to have an abortion produced upon her. The testimony was very weak, and was evidently that of an unwilling witness. However, there was sufficient in it to show the purpose of the woman's visit, and that some acts were done towards the accomplishment of that purpose. The attorneys for the people justify this testimony on the ground that it tended to prove guilty knowledge or intent, and rely upon *People* v. *Seaman,* 107 Mich. 348 (65 N. W. 203, 61 Am. St. Rep. 326). This case is not within the rule there announced, or within the authorities there cited. This case does not form an exception to the general rule of evidence. Where the intent or guilty knowledge is a necessary conclusion from the act done, proof of other offenses of a similar character must be confined to the issue. Upon the record, there is no room for an inference that death resulted from accident, or that the operation was performed to save the life or health of the deceased. On the contrary, if the jury found that the dying declaration of the deceased was true, the crime was complete, and the jury could not find otherwise than that it was done with guilty knowledge and intent. This testimony should have been excluded, and for this reason the conviction must be set aside."

There can be no sort of question that at the state of pregnancy described by the prosecutrix, the introduction of the sharp instrument into her womb and turning it around therein as she states, was intended to destroy the child. No other reasonable conclusion

could be drawn from that testimony. If the defendant did that act, the statutory intent is as plain as day, and as to it the conclusive presumption of the statute controls to the exclusion of extraneous facts indicating the commission of other offenses. The only other element of the statute, that of necessity to preserve the life of the mother, does not depend in any manner or degree upon the commission of other abortions; it depends solely upon the state of her health and the condition of her person at the time the act named in the indictment was committed. For that purpose, it matters not that he had committed a dozen criminal abortions upon her or any other woman. The preservation of the mother's life rests exclusively upon conditions existing at the time of the commission of the act charged in the indictment.

An analogous case is *Gray* v. *State,* 77 Tex. Cr. 221 (178 S. W. 337), an abortion case cited by the state, the facts in which are almost the same as in the instant case. On the first hearing the opinion upheld the doctrine that the state could show that defendant had committed other abortions. On rehearing the first opinion was discarded and the court held that evidence of other like offenses was admissible

"only in those cases where the evidence adduced on the trial raised the issue that there might be no guilty intent, that evidence of other offenses became admissible and for that reason."

The final opinion relied upon a statute of Texas:

"The intention to commit an offense is presumed whenever the means used are such as would ordinarily result in the commission of the forbidden act."

The substance of the statute quoted is much the same as that of Section 798, Or. L.

In *Clark* v. *State,* 59 Tex. Cr. 246 (128 S. W. 132, 29 L. R. A. (N. S.) 323), the defendant was caught in the act of burglary. Evidence of another burglary the same night was given, and the state showed that defendant had in his possession some property taken in that burglary. This was held error, the court saying:

"Evidence of this character is sometimes admissible on the theory of system to develop the *res gestae* or on question of identity, but none of these matters occurred in this case. The evidence is clear and unequivocal that the house of the alleged owner was broken into, and appellant found in the act of committing theft. Therefore the testimony in regard to the burglary of the other house was not admissible. It served no purpose, either of identification, system, or developing the *res gestae.* The case was made out by positive evidence here, and there was no legal authority for resorting to this character of testimony to make out this case."

Finally, this point, that where the act is unequivocal and inconsistent with innocence, if it occurred at all, as described by the evidence for the prosecution, no other testimony as to intent is material or admissible, is settled by the opinion of this court in *State* v. *Smith,* 55 Or. 408, 418 (106 Pac. 797, 800), where Mr. Chief Justice MOORE wrote concerning a charge of arson:

"The motive which induced the burning of the building specified in the formal charge was the alleged enmity of the defendant and the accomplice against Williamson in consequence of the latter's appropriation of the grazing lands, but the intent with which such act was accomplished was immaterial, since the crime did not consist of degrees, and if the defendant set fire to the structure as alleged, an un-

lawful intent would be presumed from such unlawful act. Section 788, subd. 2, B. & C. Comp. In equivocal transactions, where the offense charged is susceptible of explanation, thereby refuting the implication of criminality, the question of intent becomes an important element, but in nearly all other instances the purpose involved is immaterial. Thus if the defendant had admitted burning the building described in the accusation, but asserted that the conflagration was caused by accident, such as dropping an ignited match on combustible material in an attempt to light a pipe or a lantern, evidence of the subsequent destruction of the tent, etc., might have been admissible as tending to refute the claims of undesigned occurrence, and to show that the prior fire was applied to the structure with an unlawful intent to burn it."

The state relies upon such cases as *People* v. *Seaman,* 107 Mich. 348 (65 N. W. 203, 61 Am. St. Rep. 326), which was an abortion case. That was an instance within the second exception enunciated in *State* v. *O'Donnell,* by Mr. Justice MOORE of this court, and it was there held:

"If it becomes necessary, in a prosecution for manslaughter, in procuring an abortion, to show defendant's guilty knowledge and intent owing to the theory of the defense that the premature birth was due to accidental causes, and that death resulted from natural causes, it may be done by proof that the defendant had produced other abortions in the same house."

And again in *Clark* v. *Commonwealth,* 111 Ky. 443, 23 Ky. Law Rep. 1029 (63 S. W. 740), the syllabus reads thus:

"Where deceased was found dead in an operating chair in the office of the defendant, a physician, and there was testimony tending to show that she died from the shock caused by an attempt to commit an abortion, declarations of the defendant tending to

show that he had committed other abortions and held himself out as an abortionist were not admissible to show that he had committed the act in question, though they might have been admissible to show intent or motive if defendant had admitted that he committed the act and had attempted to justify it upon the ground of necessity."

These cases have no application to the instant contention, where the defendant does not pretend to confess and avoid anything. The case does not come within the second exception of admitting the act and seeking to avoid criminal responsibility for lack of intent or want of guilty knowledge. There are many cases involving the element of fraud, such as obtaining money under false pretenses, forgery, counterfeiting and the like that depend upon an entirely different principle from the case in hand, and have no application here. Much has been written on this subject and it must be admitted that there are cases supporting the doctrine advanced by the state in this instance. None of them are well reasoned. Most of them depend upon misapplication of instances of a crime entirely different from the one here charged. Many of them are extreme cases where the prosecution was eager for a victim. These make bad precedents.

9. In brief, the general rule against the admission of testimony about other crimes is still in force. The so-called exceptions are not to be extended. As said by Mr. Justice RAPALLO in *People* v. *Corbin,* 56 N. Y. 363 (15 Am. Rep. 427):

"The cases in which offenses other than those charged in the indictment may be proved, for the purpose of showing guilty knowledge or intent, are very few."

113 Or.—32

The evidence of other offenses in this case only tend to blacken the character of the defendant. They are not admissible to show intent for that is completely and conclusively established by the act itself if the testimony introduced by the state is to be believed. It is contrary to the reason of the law to admit the objectionable testimony of other crimes. The defendant had a constitutional right to be informed of the nature of the charge against him and to be held to answer only the crime named in the indictment. No defendant ought to be deprived of his liberty by hue and cry or by the mob-mad yell of "Crucify him," but only upon an indictment constitutionally framed and proven by evidence of criminal acts, a connection between which "must have existed in the mind of the actor, linking them together for some purpose he intended to accomplish."

The petition for rehearing is denied, and the cause remanded for further proceedings.

REHEARING DENIED AND CASE REMANDED.